The truth of the matter seems to be that the titles of Albert Hanson did not describe the particular lands in controversy so as to identify the same; and that, for that reason, they were not conveyed to the Hanson Company.

Judgment affirmed.

See dissenting opinion of PROVOSTY, J., 58 South. 568.

─────────

(58 South. 569.)

No. 18,943.

GILLION v. NEW ORLEANS RY. & LIGHT CO.

(May 6, 1912.)

*(Syllabus by the Court.)*

APPEAL AND ERROR (§ 999*)—REVIEW—QUESTIONS OF FACT.

Where the only issue in a case is whether a passenger attempted to alight from a car and was negligent in so doing, or whether the crew of the car was negligent in starting it prematurely, this court will not disturb the verdict of the jury, where the verdict is not manifestly erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3912–3921, 3923, 3924; Dec. Dig. § 999.*]

Appeal from Civil District Court, Parish of Orleans; Thos. C. W. Ellis, Judge.

Action by Sarah Gillion against the New Orleans Railway & Light Company. Judgment for defendant, and plaintiff appeals. Affirmed.

J. J. Prowell, for appellant. Dart, Kernan & Dart, for appellee.

BREAUX, C. J. Plaintiff complains of a fall from one of the cars of the defendant company to the ground, from the effects of which she suffered, and for which she claims damages in the sum of $2,500.

The date that she was thrown down by the sudden and violent motion of the car, as she alleged, was the 6th of February, 1910; the hour 8:30 p. m.; the place was the corner of Urania and Coliseum streets.

She represents: That, on reaching Race street, the conductor failed to stop, although requested by her to stop at the time that she paid her fare when she entered the car. Carried beyond Race street, she signaled to him from her seat in the car. He gave the signal to stop at the next street. She arose, and went to the rear platform for the purpose of alighting. She there met the conductor, who spoke rudely to her, and she said to him that he had not stopped where she had requested him to stop. The car came to a stop. She stepped forward, but, as she reached the step and was about to step down to the ground, the sudden and violent motion of the car caused her to let go, and threw her with violence into the street on its hard pavement. That as a result of the fall her face was torn and lacerated, also her hands, her body bruised, and she was covered with dust. That she found her way home as well as she could, and fell at her door, and was removed therefrom by members of her family, and a physician was called. She was confined to her bed one week and suffered greatly, and still suffers pain in the left side of her head. She says that before the fall she enjoyed good health, was robust, and equal to the performance of household duties at her home. Now she is not.

Defendant pleaded contributory negligence on the part of the plaintiff, and denied liability.

The case was tried by a jury.

The jury was divided—ten for the defendant and two for the plaintiff.

The judge of the district court overruled the motion for a new trial, and gave reasons for overruling the motion. They are clearly stated, and, for that reason, are inserted here:

"Of the fact that plaintiff was injured and has suffered in consequence I have no doubt. The testimony of witnesses leaves no doubt in my mind in that respect. She was violently thrown or fell from the car, her head was bruised and bleeding, her hands skinned, and her clothes bedraggled and soiled.

"To what she said to strangers in her dazed and distressing condition I give small heed.

"On the crucial fact, whether she left the moving car, or whether she was jerked off the standing car, the jury have determined against the plaintiff. On this question they decided against the plaintiff. It is sure that the car moved into Felicity on the curve and stopped. This is not irreconcilable with plaintiff's statement that, having passed Race street, contrary to her request to be stopped at Race, it had moved to Urania street, and had stopped. These streets are irregular. Urania runs to Coliseum. Felicity is not far above, and on Felicity this line of cars curves in for a short block, and then curves, going uptown. Plaintiff was picked up between Urania and Felicity, nearest to the former street. She had requested to be put off at Race street, and the conductor forgot. Seeing the lighted church from across Coliseum Place—i. e., the church at Race and Camp streets—she walked back and reminded him of his omission to stop, and he gave the bell to stop, which, it would seem, would be at Urania street. The Coliseum line curves, and recurves along Coliseum Place, and the lighted church is easily visible for a square's distance away. I lived for years right there, and I know the locus in quo well. If I had the case originally, I might have doubts. The jury were judges of the law and facts. So also are the justices of the Supreme Court. On the jury trial the district judge is judge of the law alone, and can express no opinion as to the facts.

"The jury was a fair one, and there was no misconduct, and they decided for the defendant. There were no exceptions to the charge of the court. The plaintiff carried the burden of proof, and the jury decided against her.

"A review of the record does not enable me to determine that I ought to submit the case to another jury.

"The motion for a new trial is therefore refused."

Plaintiff has not sustained the charge alleged in her petition of rudeness of utterance or conduct on the part of the conductor. She had asked him to let her alight at Race street. The car continued slowly from Race street and was running slowly just before entering a curve. It came to a stop in answer of the conductor's bells to the motorman. Just before the stop, the conductor met plaintiff on the platform, and said to her that he had forgotten to stop at Race street, and that she would have to ride on to the next block. She made no complaint; on the contrary said that it did not matter.

If there had been rudeness on the part of the conductor, the result might have been different, for no one with proper feeling is inclined to consider with patience any conduct such as charged on the part of a conductor to a passenger. His testimony would have been considered in a different light, for a conductor guilty of such conduct would hardly be considered at all truthful. In this instance the testimony of the conductor was intelligently given. He does not seem to have been inclined to exaggerate or to make statements of what he knew when he did not know. A number of questions were propounded which might have been exaggerated had be been inclined to utter untruths. The jury heard him testify; had the opportunity to notice his demeanor while testifying. The judge presiding evidently did not suspect him of an attempt to swear falsely. The responsibility of a conductor to a passenger is considerable. He sometimes has a difficult task on his hands, and should not be condemned for improper conduct and negligence, unless it be evident that the facts are against him. We have naught to do or to say at this time in regard to the defendant company. We only refer to the conduct of men who, while performing the work of conductors, should always be polite and attentive to lady passengers; but that does not

warrant hasty conclusions to a conductor's prejudice and detriment.

The car was moving slowly in order to come to a stop at the next block, as stated by the conductor.

The passenger (plaintiff) was a little hasty, and stepped to the ground a moment before the car had come to a full stop, and was thrown some eight or ten feet to the rear of the car.

The argument of her counsel is that there was a jerk of the car at the moment, and by effect of the jerk she was thrown to the ground and injured. The evidence is conflicting at this point between slow motion of the car just before stopping and a jerk at the stop. The jury adopted the former view. We cannot say that they erred. Even the testimony of plaintiff as a witness does not give rise with any certainty to that impression. The weight of the testimony is that it was in alighting a moment before the time for alighting that she was injured, and that the conductor was not at fault as charged; that he warned the lady, even touched her arm. Had he taken her arm, held her, as the issues seem to present the conductor should have done, there might have been ground for complaint.

Our conclusion is that she alighted before the car stopped, lost her balance, and fell.

She is of a nervous temperament, and was worried at the time and anxious, we infer, to return to her home. Her attending physician, some months after the accident, testified that she came to him for treatment. Of her physical condition he stated that there were no objective symptoms, but that they were subjective, using the words in their technical sense. He did not seem to think that the accident was the immediate cause of her nervous condition.

For reasons stated, the judgment is affirmed.