(77 South. 647)

No. 22658.

PETERSON v. NEW ORLEANS RY. & LIGHT CO.

(Jan. 3, 1918.   Rehearing Denied Feb. 7, 1918.)

*(Syllabus by the Court.)*

1. STREET RAILROADS ⚙═>90(5)—PERSONAL INJURY—NEGLIGENCE.

It is negligence on the part of a motorman, approaching a street crossing, not to reduce the speed of his car and have it under such control as to be able to avoid colliding with a heavily loaded auto truck crossing the track slowly in front of the car in plain view and at an apparently safe distance.

2. NEGLIGENCE ⚙═>93(1) — IMPUTED NEGLIGENCE—NEGLIGENCE OF CHAUFFEUR.

Negligence on the part of the chauffeur operating an auto truck is *held* not imputable to his employé seated beside him on the truck.

Provosty, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Suit by Charles Peterson against the New Orleans Railway & Light Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Dárt, Kernan & Dart, of New Orleans, for appellant.   Woodville & Woodville, of New Orleans, for appellee.

O'NIELL, J.   The plaintiff sued the New Orleans Railway & Light Company and the Jackson Brewing Company for $7,500 damages for personal injuries which he alleged he had suffered in a collision between an electric car of the railway company and an auto truck of the brewing company. During the trial before a jury he abandoned his case against the brewing company. The jury rendered a verdict in his favor for $1,500, and

judgment was rendered against the railway company accordingly. The defendant prosecutes this appeal, and the plaintiff, answering the appeal, prays for an increase of the judgment to the amount sued for.

The plaintiff was employed by an employé of the brewing company, named Charles Kuhne, to assist him in his work of delivering beer to the customers of the brewery. The plaintiff's wages were paid by Kuhne personally. The two men were engaged in their work at the time of the accident. Kuhne was operating a three-ton motor truck, carrying a load of beer in barrels or kegs, weighing 2,000 or 3,000 pounds. The plaintiff sat beside Kuhne on the chauffeur's seat, but had nothing to do with running the truck.

The collision occurred at the intersection of Dauphine and Desire streets. The auto truck had entered Desire street from Burgundy, one block from Dauphine, running on second speed. The mechanism was set or "sealed" so that it could not go faster than 10 miles an hour on high speed. Its maximum rate on second speed was less than 5 miles an hour. Desire street being paved with large granite blocks, it was impossible for the truck to travel faster than 4 miles an hour on that street. The truck was going at that speed until it came into Dauphine street, when Kuhne reduced his speed to about 3 miles an hour, preparing to cross the railway track. A building at the corner of Dauphine and Desire streets, flush with the sidewalk, obstructed the view of the approaching trolley car from the position of the men on the truck until they entered Dauphine street. The trolley car was then about 200 feet from the crossing and coming at a high rate of speed. Believing the car to be at a safe distance, Kuhne proceeded to cross the track without having shifted his gear from second speed. Dauphine being a very narrow street, the truck had only about 40·

feet to go to cross the track in front of the trolley car when Kuhne saw the car. But the motorman did not reduce the speed of his car as he approached the crossing until it was too late to avoid the collision. The car struck the hub of the hind wheel of the truck and knocked the vehicle entirely across the street. When the trolley car was stopped, it had gone 40, or possibly 75, feet beyond Desire street, and the truck was standing with one front wheel and one hind wheel on the sidewalk, headed uptown, whence the trolley car had come. The distance that the heavily loaded truck was thrown by the impact, the damage done to both vehicles, and the distance the trolley car traveled after colliding with the truck, all convince us that the trolley car came to the crossing at an excessive rate of speed. In fact, as the trolley car traveled a distance of about 200 feet, while the auto truck went less than 40 feet, from the moment that the motorman and the chauffeur were in a position to see each other, it is certain that the trolley car maintained a speed of about 20 miles an hour—five times as fast as the truck—until an instant before the collision, when the motorman attempted to stop the car. A passenger in the car testified that it was going unusually fast, and that she felt no sudden stopping, nor reduction of speed at all, until the crash occurred. Her testimony is corroborated by the effect the collision had on both vehicles.

[1] It was negligence on the part of the motorman to approach the crossing at such a high rate of speed when he saw, or should have seen, the heavily loaded truck crossing the track in front of his car. The truck was about 20 feet long. Considering how slowly it crossed the track, we cannot understand why the motorman did not reduce his speed in time to avoid the collision.

[2] There was no negligence on the part of Kuhne in attempting to cross the track as far as he was in front of the trolley car when he came into Dauphine street. If he was guilty of contributory negligence in that respect, it would not interfere with the plaintiff's right to recover damages from the railway company for the negligence of the motorman, for two reasons, viz.: First, because the motorman had the last clear chance to avoid the accident; and, second, because negligence on the part of Kuhne could not be imputed to the plaintiff. He was no more responsible for any negligence that Kuhne might have been guilty of, than if he, the plaintiff, had been a passenger for hire.

Our conclusion is that the judgment appealed from is correct. The amount allowed by the jury may be less than the evidence seems to justify. The use of the right hand of the plaintiff was to some extent permanently impaired. But an examination and explanation of the injury was made by a surgeon in the presence of the jury, who were therefore more capable of judging the extent of the injury than we are.

The judgment appealed from is affirmed at the cost of the appellant.

PROVOSTY, J., dissents.