O’NIELL, J.
Plaintiff’s daughter, Miss Dewhana Maritzky, was killed by a street car colliding with an automobile in which she was riding. He obtained judgment against the railway company for $5,000 damages. The defendant appeals; and plaintiff, answering the appeal, prays that the amount of the judgment be increased to $10,000.
The allegations charging negligence are: (1) That the street car was going at a very dangerous speed, exceeding the limit of ten miles an hour, fixed by municipal ordinance; (2) that defendant’s employes operating the car violated another municipal ordinance by failing to stop before crossing an intersecting car line, one block away, on the last street that the car crossed before the collision occurred; (3) that the employés in charge of the car failed to sound an alarm or give warning of danger, failed to keep a lookout for danger, or to have the car under control, or make an effort to stop, until it was too late to avoid the collision; and (4) that the railway company was negligent in failing to have the car equipped with air brakes, instead of the antiquated, slow and ineffective brake with which the car was provided.
Defendant denied that the fatal accident was caused by any fault or negligence on defendant’s part; denied that the speed of the car was dangerous or excessive, or unlawful; denied that the men operating the car failed in any duty, or were negligent in any way, or could have avoided the accident. Defendant admitted that the car was not equipped with an air brake, but averred that the brake with which it was equipped was a proper, efficient and usual equipment, not antiquated. Defendant averred that the accident was caused by the recklessness of the driver of the automobile and of those within the vehicle, including plaintiff’s daughter, Dewhana Maritzky. Defendant alleged that, while the trolley car was proceeding at a moderate and lawful speed along Crockett street the automobile came suddenly out of Edward street (intersecting Crockett street), at a rapid and unlawful speed, and, turning into Crockett street, rushed upon the railway track toward the approaching street car; that the sudden appearance and swift movement of the automobile made it impossible for those operating the street car to avoid a collision, though in fact they did all that was possible to avoid it; that the driver of the automobile failed and neglected to stop, look or listen for an approaching street car, before he turned into Crockett street, notwithstanding he and all other occupants of the automobile were familiar with the situation and knew there was a car line on Crockett street; that there was no necessity for going upon the car track to make the turn into Crockett street, or there would have been no necessity for going upon the track in making the turn if the automobile had been going at lawful speed; and that every occupant of the automobile, including plaintiff’s daughter, Dewhana Maritzky, participated in the negligence and recklessness of the driver. Defendant, averred in the alternative, and protesting innocence of negligence, that, if the court should find that there was negligence *695 on. defendant’s part, the negligence of the driver of the automobile, and of plaintiff’s daughter and of the other occupants of the vehicle, contributed to and caused the accident, and that therefore plaintiff could not recover damages, even if defendant had been guilty of negligence.
The collision occurred near — 40 or 50 feet below or south from — the intersection of Crockett street and Edward street, in Shreveport, at a late hour at night, near midnight. The automobile was being driven by its owner, H. B. Hirsh, 20 years of age. Miss Maritzky was his guest in the car and sat beside him. Three other guests of Mr. Hirsh occupied the rear seat. They were Miss Maritzky’s sister and Miss Florence Groner and a brother of Mr. Hirsh. The party was returning home from a dance given at the Elks’ Lodge, which is located on Edward street, in the first block west from Crockett street. The car line is on Crockett street, running north and south, or nearly so, and crossing Edward street at right angles. There is a driveway along either side of the railway track. Hirsh had parked his automobile on the south side of Edward street, about 60 feet — possibly 100 feet — west from Crockett street. His way home — or the route he intended- to take — was via Crockett street, south. When he started his automobile toward Crockett street, headed east, he was not aware that i¿he offending trolley car was coming north toward Edward street His intention was to turn to the right or south into Crockett street and proceed along the driveway on the right or west side of the car track. He did not see or hear the car coming until he was turning or had turned into Crockett street, when the car was nearly a block away; and he thought he had ample time to make the turn. In making it, however, the arc he scribed went across the rails, and, before he could clear the track, the street car came in contact with the left side of the automobile. It killed Miss Maritzky, broke Miss Groner’s collar bone, and wrecked the automobile. The photograph of it, taken next day, resembles a piece of junk in a scrap heap. The machine was knocked by the impact 45 or 50 feet backward, to the western sidewalk, where it struck against a hydrant. All occupants of the vehicle were thrown out, and the seat cushions were thrown 30 or 35 feet beyond the hydrant. The street car was stopped about 80 or TOO feet beyond the place of collision.
The motorman testified that he saw the automobile coming out of Edward street when he was about 110 feet from the crossing, and thought the machine would go straight across the track and proceed down Edward street. He says he sounded his gong, shut off his power and took up the slack in his brake. Then he saw that the .automobile was turning to the right, and he thought it would go- across the track and proceed down Crockett street on the east side (his right side;. He says he tightened his brake to give the automobile time to cross the track in its curving course; and, when he was only 25 feet from the automobile, he saw that it was curving so as to pass on his left side (the west side of the street car). He says he reversed his gear instantly, but it was too late.
[1, 2] It is quite certain there would have been no collision if both the motorman and Mr. Hirsh had. been obeying the municipal ordinance limiting the speed of street cars and other vehicles to ten miles an hour. Putting aside for the moment all other questions of negligence, the question is: Which of the two vehicles was exceeding the speed limit? Or were both the motorman and Mr. Hirsh violating the law in that respect?
The conductor and motorman testified that they were going at about ten miles an hour, not exceeding that speed, when the motorman saw the automobile coming out of Edward street. The Hirsh brothers testified that the street car was making 40 or 50 miles an hour when they first saw it. Two *697 disinterested witnesses, judging only from the noise the street car was making, said it was going very fast. Two others, one of whom saw the accident and the other heard and saw the street car pass the house he was in just before the accident, estimated the speed at 25 to 80 miles an hour. An estimate of the speed of a vehicle, based only upon the observation of a witness, is usually not much more than a guess, after all. We think the admitted results of a collision like this furnish better evidence than an observer’s estimate or guess of the speed, as to whether one or the other vehicle was going too fast. See Peterson v. New Orleans Ry. & L. Co., 142 La. 837, 77 South. 648, where it was said:
“The distance that the -heavily loaded truck was thrown by the impact, the damage done to both vehicles, and the distance the trolley car traveled after colliding with the truck, * * * convince us that the trolley car came to the crossing- at an excessive rate of speed.”
The automobile in this case, the evidence shows, was heavier than the average weight of a five-passenger car. There were five grown people in it, and it was going nearly 10 miles an hour. The street car was of the smallest type in Shreveport, described as a single-truck car, and had no one on it except the conductor and motorman. It struck the automobile a glancing blow, and it must have taken a very swift blow to counteract the momentum of the automobile and send it back 45 or 50 feet. The evidence shows, too, that the trolley car was going upgrade; not up a steep grade, but somewhat upgrade. Common sense tells us that if, under those circumstances; a street car of comparatively small type, going only ten miles an hour, can do all the harm this one did and then, with brakes on and mechanism reversed, cannot be stopped within a distance of 100 feet, municipal governments would do well to look into their traffic regulations and reduce their speed limits.
The trolley car was very near its destina.tion when the accident occurred; and the “trip sheet” or schedule of the trip, kept by the defendant company, showed that the average speed on the trip, eliminating stops, to the time of the collision, was 11.6 miles an hour; that is, 1.6 miles more than the lawful speed per hour. Even the elapsed time, according to the trip sheet, showed that the average speed was above 10 miles an hour, without making allowance for stops. And we conclude, as did the district judge, that the speed of the car was very much faster than 10 miles an hour at the time of the collision.
[3] We agree also with the finding of the district court that the automobile was not going faster than 10 miles an hour. The motorman judged that the automobile was making about 15, but Hirsh said about 10, miles per hour. The place whence it started was only about 60 feet (possibly 100 feet) from the turn into Crockett street, and the machine (being a three-speed car) was yet in second speed when the collision occurred. There is expert testimony, too, that the machine could not have been going faster than 10 miles an hour, under the circumstances.
[4-6] It appears to have been possible for the automobile driver to make the turn to the right short enough to avoid the street car track, in turning from Edward street into the right driveway on Crockett street. To avoid the railway track was more a matter of uncertainty than of difficulty on the part of an experienced chauffeur, making the turn. It does not appear that Hirsh lacked experience, and we do not think he was reckless or negligent in attempting to turn into Crockett street when he saw the trolley car so far away. He had a right to presume that the motorman was obeying the speed law; and, if the motorman had been obeying the speed law, there would have been no danger. We are also of the opinion that, if Hirsh was im *699 prudent in'that respect, it was no fault of Miss Maritzky and was not the only act of negligence that contributed to the fatal accident. As a general rule, negligence on the part of a driver of an automobile is not imputable to his guest in the car. Jacobs v. Jacobs, 141 La. 272, 74 South. 992, L. R. A. 1917F, 253.
The amount of the judgment is about what is usually allowed in such cases.
The judgment is affirmed.
DAWKINS, J., takes no part.