No. ——

First Circuit

——

CAMPBELL ET UX. v. HAAS

——

(June 5, 1926. Opinion and Decree.)
(June 26, 1926. Rehearing Refused.)

——

(*Syllabus by the Editor.*)

1. Louisiana Digest—Appeal—Par. 625, 628.

The verdict of the jury and the finding of the trial court that the defendant

was driving his automobile at an excessive rate of speed and negligently, being clearly correct, is affirmed.

**2.  Louisiana Digest—Automobiles—Par. 6.**

The negligence of an owner of an automobile in parking her car on the left side of the road with her bright lights burning cannot be imputed to her guest.

**3.  Louisiana   Digest — Automobiles — Par. 6, 7.**

No negligence can be imputed to a guest in an automobile accident because she remained behind the car while it was parked on the left side of the road with its bright lights burning.

(Civil Code, Art. 2315.  Editor's note.)

Appeal from the Parish of St. Landry. Hon. B. H. Pavy, Judge.

Action by J. Posey Campbell et ux. against Leon S. Haas.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

D. L. Guilbeau, of Opelousas; White, Holloman and White, of Alexandria, attorneys for plaintiff, appellee.

L. A. Fontenot, R. L. Garland, Jno. W. Lewis; Dubuisson, Perrault & Burleigh, of Opelousas, attorneys for defendant, appellant.

MOUTON, J.   Miss Lucy Louise Campbell was injured in an automobile accident December 29, 1923, and died of the results of her injuries January 3, 1924. Her surviving parents bring this suit for the sum of $25,000.00 against defendant, alleging that her death was caused by his fault and negligence.

Judgment was rendered below in favor of plaintiff for $6250.00 in accordance with the verdict of a jury which tried the case.

Defendant appeals and plaintiffs are asking for an increase in the judgment.

The deceased was, on the night of the accident, invited by Miss Marie Maginley to take a ride with her in a Ford touring car.  She accepted the invitation and sat on the front seat with Miss Maginley.  In company with deceased and Miss Maginley were the latter's two nieces, Miss Agnes May Allen, about 19 years of age, and her sister, Miss Marie Louise Allen, about 16 years, the daughters of F. C. Allen, who owned the car.  Miss Maginley had charge of the car and was driving it on the trip in question.  She drove the car from the city of Opelousas on the Bellevue Road in a southern direction to a Mr. Velletin's place, and then back towards Opelousas to a point opposite the home of C. P. Smiley, where she stopped to get assistance for repairs to a puncture in the left rear tire of her car.  She went across the road from the right side in going northward towards Opelousas, to the left side, and parked her car there, the left rear wheel being about two feet from the ditch, with both lights burning brightly, and facing towards Opelousas.  It was then about 8:30 P. M., and rather dark.  Mr. Smiley, carrying a lantern, came up to the assistance of Miss Maginley. The road, at this point, is smooth, well graveled, and is twenty-five feet wide, with a ditch on each side six feet deep and about seventeen in width.  All the occupants of the car, including the deceased, got down and with Mr. Smiley and his wife went in the immediate rear of the car.  Mr. Smiley not having had much experience with cars was assisted by Miss Maginley and Miss Agnes Allen in remov-

ing the flat tire and putting another in its place. After the tire had been changed, Miss Agnes Allen started to let the car down off the jack, and was, therefore, at that time near the wheel from which the flat tire had been removed. Mr. Smiley was then stooping over the rack which is behind in the middle of the car, fixing on it the flat tire which had been taken off the wheel. The parties were nearly through with the work when Miss Maginley suddenly screamed: "For God's sake get out of the way, a car is coming", or words to that effect, but before any of the six parties behind the car could move from the position in which they were when Miss Maginley screamed, the Ford or Maginley car was struck by defendant's auto, knocking the Ford car with such force that it projected against the six parties in the rear of it, knocking all of them down, and rendering five of the parties more or less unconscious for a time, and fatally injuring Miss Lucy Louise Campbell, who died a few days thereafter as hereinabove stated.

Mr. Leon Haas, defendant, left Opelousas in a Wills St. Clair car in company with two of his friends, Messrs. Sanders and Moresi, about 9 the same evening, with the intention of making a social call on Mr. Willis Roy, a friend who lives on the Bellevue Road about three miles below Opelousas. A short distance from Opelousas there is a bend or curve in this road. This turn in the road occurs at a distance of 679 feet from where the Maginley car was parked opposite the Smiley residence. It is, however, a very slight curve, being only of two degrees. The defendant was driving a new car which had not yet traveled 500 miles, according to his testimony and that of Sanders, one of his witnesses. He says the greatest speed to which he had subjected this car was about twenty-five miles an hour, as a greater speed than that is always injurious to such cars up to 500 miles. He says, as he was rounding the curve, he passed a Ford car and then another which were traveling toward Opelousas in an opposite direction. These cars were on the right-hand side of the road going northwards, while defendant was traveling southward near the ditch on the left-hand side. He says, just as he got out of the glare of the second car, he observed bright lights, extremely bright lights from another Ford. This Ford car was the Maginley car. According to the testimony of Mr. Sanders, they passed the two cars at about 100 feet from where the accident happened. The defendant says the Maginley car had all the appearance of a car with lights moving up and down, and had a light behind which led him to believe another car was coming, and from which he concluded it would also pass to his right. His companions in the car seem also to have been under the same impression. The only possible cause for this vibration of the lights on that car would have been from the letting down of the car on the jack which it appears Miss Agnes Allen was engaged in about that time. We do not think such a slight movement of the car on the jack could have possibly caused the lights to move up and down to the extent of giving to the Ford car the appearance of a moving car, nor do we think for an instant that the light from an ordinary kerosene lantern which had been set on the ground behind Mr. Smiley, who was placing the flat tire on the rack back of the car, could have projected its light from under or on the side of the car so as to create the impression on the defendant that another car was coming from behind. He says, when he first realized that the Maginley car was parked, he was then at

a distance of forty or fifty feet from it; that he then immediately applied the foot and emergency brakes and deliberately ran into the ditch to avoid the collision. He is supported in this statement by Messrs. Sanders and Moresi. Defendant had about eighteen feet on the left side of the road where he could have safely passed the Maginley car if he had swerved in that direction, but explains that he did not do that because to do so he would have run into the light which he thought was coming from behind the Maginley car, of which, however, there was no danger as no car was coming from that point.

Asked at what rate of speed he was going when his car struck the Maginley car, defendant said: "I had to slow down when I met these Ford cars, and I presume I was running at a speed between 20 and 25 miles." Sanders and Moresi place the same estimate on the speed of defendant's car at that time. Sanders testified that a car traveling at that rate could be stopped "at about 35 feet". It is shown that when defendant realized the Maginley car was not moving that he was then forty or fifty feet from it; that he immediately applied the foot and emergency brakes which, upon examination after the accident, were so effectively on that they had to be unlocked by a mechanic. When defendant saw the danger ahead of him, it may be considered as fairly established by his own evidence and that of his two witnesses that his car was then certainly forty feet and possibly fifty feet from the Maginley car. It is also certain that the brakes were immediately and effectively applied. It should therefore have been stopped at a distance of not less than five feet from the other car, and possibly within ten or fifteen feet therefrom. According to the testimony of Sanders, the left front tire of defendant's car

touched the left front fender of the Maginley car. The testimony of the other witnesses shows that a slight dent or imprint on the tire or fender of the cars marked the place of contact between the two cars. It is therefore fair to conclude that the Maginley car received a glancing blow from defendant's car. It appears, however, that the Maginley car was knocked diagonally across the highway, fatally injuring Miss Campbell and knocking down, temporarily unconscious, the five others behind the car who did not have the time to get out of the rear after hearing the screams from Miss Maginley that a car was coming on them. Smiley, according to his testimony, was knocked twelve or fourteen feet from the car, and, according to that of his wife, about twelve feet. Smiley says he was badly crippled up and was sent to the hospital where he stayed about a week for treatment for his injuries. Miss Maginley testifies that the defendant's car was coming at a tremendous speed, that when she saw it advancing so rapidly she hardly had time to think and hollered for everyone to get out of the way. Miss Agnes Allen, who, as before stated, was letting the car down off the jack and was therefore near the left-hand side, says, when her aunt, Miss Maginley, cried: "Look out", she looked around the side of the Ford and saw the lights of the defendant's car approaching, but that before she could move she was struck, was knocked down, and when she got up that she could not remember anything. Her sister, Miss Marie Louise, says after Miss Maginley had screamed she did not have time to do anything before the Maginley car was knocked by the defendant's auto. Mrs. Smiley says she could not say how fast the car was coming but that "it wasn't creeping". Miss Maginley has a suit pending against defendant in damages for the injuries she received as a result of the col-

lision, and the Misses Allen are her nieces. It may be possible that Miss Maginley was prompted in her evidence by interested motives, and that her young nieces were, in giving their testimony, influenced more or less by a friendly feeling for their aunt. It must be said, however, in fairness to them, that there appears nothing either evasive or elusive in their evidence which would justify such an inference. However that may be, it is certain that neither Smiley nor his wife could have been prompted by any such considerations in the narrative they gave of the occurrence. As the defendant's car was advancing towards them, and during the night, it was impossible for Miss Maginley, the Misses Allen and Mrs. Smiley to fix with any degree of accuracy the speed at which it was traveling. Their testimony shows, nevertheless, that it was traveling at a rapid speed, especially as it is supported by the effects of the impact of defendant's car which knocked to the ground five persons and killed one, as it is hereinabove more specifically stated.

In Maritzky vs. Shreveport Rys. Co., 144 La. 692, 81 South. 253, the court said, in considering the question as to whether a street car was exceeding an ordinance limit, that the immediate results of its collision with an automobile furnished better evidence than an observer's estimate as to a street car's speed. This case affirms the views of the court on the same subject previously expressed in Peterson vs. New Orleans Ry. & Light Co., 142 La. 837, 77 South. 647.

In Maritzky vs. Shreveport Rys. Co., 144 La. 692, 81 South. 253, the court, in the body of the opinion, took occasion to say that: "An estimate of the speed of a vehicle, based only upon the observation of a witness, is usually not much more than a guess, after all." Here, we took note of the testimony of Miss Maginley, Mrs. Smiley, and the Misses Allen, only to the effect that it might be considered as showing that defendant's car was moving at a rapid speed as it was supported by the physical facts which resulted from the collision. In connection with the appreciation we have given to this character of evidence, it may not be amiss to refer to the fact that defendant, Sanders and Moresi in rating the speed at which they say defendant's car was traveling when the accident happened, they were merely giving an estimate thereof as occupants of the car. We know of no case where it is recognized that the occupants of a moving car can with accuracy give the rate at which it is moving, particularly when it is traveling in the night time. It is possible that it can be given with sufficient certainty to justify a finding of fact upon it. When asked how fast he was traveling at the time of the accident, defendant said: "I presume I was running at a speed between twenty and twenty-five miles." There is a good deal of uncertainty in this answer and which is pregnant with the suggestion that there is no entire reliability to be placed on such an estimate. Hence, the sound logic of the opinion in the Maritzky vs. Sherevoprt Rys. Co. case that the immediate results of a collision is better evidence than an observer's estimate of the speed of a vehicle.

We therefore conclude from our analysis of the evidence as above outlined that the defendant was traveling at an excessive and dangerous speed when he struck the Maginley car. As this question presents the vital issue in the case, and as defendant, unless he was at fault in that respect, could not under any circumstances have been held responsible to plaintiffs, it must therefore unquestionably have been

discussed by able counsel on both sides with zeal and fervor before the jury which tried the case below. The jury by its verdict has passed adversely to the contentions of defendant on this subject. In the case of Gillion vs. New Orleans Ry. & Light Company, 130 La. 777, 58 South. 569, the issue presented was as to whether the party complaining had negligently attempted to alight from a car or the crew of the car had been negligent in starting it prematurely.

The court found that the evidence was conflicting on that point, but it held that it would not disturb the verdict of the jury, unless it had been manifestly erroneous. Similar views were expressed by the Supreme Court in Cahill vs. N. O. Ry. & Light Co., 139 La. 185, 71 South. 360, though based on a different state of facts. In Mequet vs. Algiers Mfg. Co., 147 La. 364, 84 South. 904, where the verdict of the jury was unanimous and no motion for a new· trial was made, which is the case here, the court said: "Great weight must be given to the jury's conclusions." It is primarily the duty of the jury to pass on the facts of a case submitted to it, and unless some weight were attached to its findings, jury trials would be practically valueless and useless. There is nothing in the evidence to justify us in holding that there was manifest error in the verdict of the jury in this case.

The defendant pleads contributory negligence on the part of Miss Campbell, the deceased, because of the parking of the car on the left-hand side of the roadway and leaving it there with bright shining lights. The car was under the exclusive control of Miss Maginley, the driver, and Miss Campbell was merely her guest. If this was an act of imprudence or negligence, on which we express no opinion,

such negligence might be chargeable to the driver of the car, but which cannot be imputed to Miss Campbell, a guest. This is now well settled. Jacobs vs. Jacobs, 141 La. 272, 74 South. 992; Peterson vs. New Orleans Ry. & Light Co., 142 La. 835, 77 South. 647; Luke vs. Morgan's Louisiana & T. R. & S. S. Co., 147 La. 30, 84 South. 483.

Miss Campbell is also charged with contributory negligence because she got behind the car, which, it is alleged, had been negligently parked on the wrong side of the road.

In passing on this question when this case was here originally on an exception of no cause of action, this court, in referring to the position of Miss Campbell in the rear of the car when the collision occurred, said:

"The allegation that the automobile in which their daughter went riding was under the sole control of Miss Maginley, the driver, negatives the idea that Miss Campbell was in any way responsible for the position of the Maginley car. When Miss Campbell got out of it and into the road, she ceased to be Miss Maginley's riding guest, and occupied the same position as any other person on foot in the road.

"Defendant contends that Miss Campbell, by being in the rear of the Maginley car while a tire was being changed, was negligent. The law required her, after getting in the road, to exercise due care and prudence for her safety and the rights of others, but there is no law of the road or custom that required her to take herself out of the road or over to the right-hand side of it. Therefore, negligence is not, as a matter of law, to be imputed to her simply because she remained on the left-hand side of the road and in the rear of the Maginley car while a tire was being changed.

"It is contended that it results from her alleged position in the rear of the Maginley car that she could not see defendant's

approaching car, but that is not more evident than that she saw it approaching and supposed that it was being driven at a rate of speed and under such control that the driver must see the Maginley car in time to stop or turn to the left of it in the ample leeway left for the purpose, and avoid striking it."

We find no reason to change our conclusions thus expressed in our original opinion on the exception of no cause of action. We therefore hold that the deceased cannot be held responsible for contributory negligence for the parking of the car by Miss Maginley on the left side of the road, or because she got in the rear of the car while they were repairing the punctured tire. The judgment appealed from is therefore affirmed with costs.

LECHE, J. I agree with my associates that estimates of speed and distances by the parties in an automobile accident are of little or no value, and I further believe that close estimates of the distance in which an automobile may be stopped when going at a speed also estimated are still less deserving of serious consideration. I am further convinced that it is impossible for persons in a rapidly moving automobile, at night, to know that another automobile whose headlights gleam in their eyes, is standing still. On the contrary, the reasonable hypothesis is that it is moving and approaching or else why the gleaming headlights.

Therefore, I do not consider it negligent on the part of the driver of an automobile to assume that another automobile is moving and approaching when it is headed towards him with glaring headlights on a curved road at night, and, acting upon that assumption, to guide his own automobile so as to pass to the right in accordance with the ordinary rules of the road.

For these reasons I respectfully dissent.