118 So.2d 431 (1960)
239 La. 338
Allean YOUNGBLOOD
v.
Douglas W. ROBISON et al.
Nos. 43874, 43878.
Supreme Court of Louisiana.
February 15, 1960.
Rehearing Denied March 21, 1960.
*432 Wilkinson, Lewis, Madison & Woods, Shreveport, for applicant in 43878.
Jackson, Smith, Mayer & Kennedy, Shreveport, for applicant in 43874.
Jackson, Smith, Mayer & Kennedy, Shreveport, for respondent in 43878.
C. P. Brocato, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for respondent in 43874.
McCALEB, Justice.
Shortly past midnight on October 20, 1955, plaintiff, a Negro woman, received severe and painful personal injuries when struck by an automobile driven by Douglas W. Robison on Linwood Avenue in the city of Shreveport while she was waiting to board a northbound trolley. Plaintiff was standing on the trolley platform, or "safety zone" on the east side of Linwood Avenue, 79 feet north of the north curbline of Claiborne Avenue at its intersection with Linwood. Just prior to striking and running down plaintiff, Robison had been driving his car northward on Linwood Avenue toward Claiborne Avenue, which crosses it at right angles, at a speed of from 50 to 55 miles per hour by his own admission.[1] As he approached the semaphore light controlling traffic at the intersection, Robison was faced with an unfavorable light but, notwithstanding this, he heedlessly drove on with speed unabated and ran the red light at a time when Dr. Carroll V. Guice, who was driving east on Claiborne Avenue at an admittedly lawful speed of approximately 30 miles per hour, had entered the intersection on the favored green traffic light. As a result, the Robison car was struck on its left rear by the front end of the Guice automobile, the former continuing forward over the intersection out of control until it struck plaintiff and knocked her against a concrete pole.
This suit for $110,992.10 damages was thereafter brought by plaintiff for a solidary judgment against Robison and his liability insurer, Fidelity Mutual Insurance Company, whose liability was limited to $5,000, and Dr. Guice and his liability insurer, Allstate Insurance Company, whose liability was limited to $10,000, the petition charging that plaintiff's injuries were attributable to the joint and concurrent negligence of the drivers of the colliding vehicles in failing to maintain a proper lookout, driving at excessive speed, and generally failing to keep, their vehicles under proper control.
The case was tried before a jury, which rendered a verdict in favor of plaintiff and against defendants in solido for $25,000 but *433 the liability of the insurance carriers was restricted to the limit of each policy. During the trial Robison readily conceded his gross negligence in all particulars. However, it having been established that he was personally unable to satisfy any judgment which might be rendered against him and the liability of his insurer being limited to $5,000, industrious counsel of plaintiff directed their main attack on Dr. Guice in an effort to show that he was guilty of some dereliction of duty which was a contributing factor to the collision between his car and the Robison car and were able to convince the jury that such was the case despite the fact that he was traversing the intersection on a favorable light and at a reasonable rate of speed.
Following the verdict Dr. Guice and his insurer moved for a new trial but the district judge overruled the motion and entered judgment in accordance with the verdict. They then appealed to the Court of Appeal, Second Circuit, where, with one judge dissenting, the judgment of the district court was affirmed. See Youngblood v. Allstate Insurance Company, La.App., 98 So.2d 570. We granted certiorari and the case has been argued and submitted for our decision.
The majority opinion of the Court of Appeal that Dr. Guice was guilty of negligence which was a contributing cause of the accident, is based entirely upon the doctor's own account of the operation of his car when he was approaching and entering the intersection and his actions from the moment he became aware that Robison was running the red semaphore light at a high rate of speed. After quoting extensively from Dr. Guice's testimony, the Court deduces that he was at fault because he focused his attention on the green semaphore light in front of him (although he says that the entire intersection was within the cone of his vision) and, admittedly, did not look to the left and right for traffic approaching on Linwood Avenue before proceeding over the crossing. To support its conclusion that Dr. Guice should have turned his head to the right to ascertain whether traffic on Linwood was obeying the law, the opinion cited several Court of Appeal cases to the effect that a motorist may not blindly proceed into obvious danger "which even one exercising slight care would have noticed and avoided." New Hampshire Fire Ins. Co. v. Bush, La.App., 68 So.2d 254, 256.
We have no quarrel with the law cited by the Court of Appeal but we fail to perceive its applicability to the facts upon which its conclusion is based. The substance of Dr. Guice's testimony is that, accompanied by a Miss Maxwell and a Mr. Davenport, he was driving his car on Claiborne Avenue at a speed of 30 to 35 miles per hour. When he was about a block away from the intersection of Linwood Avenue he noticed that the traffic light was red so he took his foot off the accelerator and slowed down. Upon reaching a point about 30 feet or more from the intersection the light facing him changed to green so he accelerated his speed and proceeded toward the intersection. At that time he was looking at the entire crossing and, because he had the right of way, he assumed that anyone travelling on Linwood Avenue would stop.[2] Nevertheless, just as he neared the entrance of the intersection, the lights of the approaching Robison car came into his line of vision and he immediately "hit the brake". From the time the brake of the Guice car took hold until it reached the point of impact with the Robison car, which was four feet east and one foot south of the center of the intersection, the Guice car skidded 28 feet.
There is nothing contained in the testimony of Dr. Guice which warrants a holding that he failed to exercise ordinary prudence in his approach to and negotiation of the crossing. He was driving at a reasonable rate of speed and maintaining a general observation of the intersection. Thus, he *434 had his car under such control as to meet and respond to any hazard which might be expected under normal conditions and this was all that the law required of him. He was not obliged, as the Court of Appeal indicates, to turn his head in the direction of traffic approaching from his left or right, or from both left and right, to ascertain whether someone might violate the law by running the crossing on a red light. On the contrary, he had the right, under our jurisprudence, to assume that the law would be respected.
In Koob v. Cooperative Cab Co., 213 La. 903, 35 So.2d 849, 851, where a stop sign was involved, the Court said:
"* * * The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law."
This rule has been cited and followed on several occasions, notably in Ryan v. Allstate Insurance Company, 232 La. 831, 95 So.2d 328; Steele v. State Farm Mutual Insurance Company, 235 La. 564, 105 So.2d 222 and Henderson v. Central Mutual Insurance Company, 238 La. 250, 115 So.2d 339.
The above cited jurisprudence governing cases where stop signs were involved applies, a fortiori, to intersections controlled by electric semaphore lights. When an intersection is controlled by a stop sign, the motorist on the favored street, as stated in the Koob case, is entitled to indulge in the assumption that any driver approaching from the less favored street will bring his car to a complete stop before entering the intersection. Nevertheless, some slight observation of the other car must be exercised because the motorist on the less favored street, who has stopped in obedience to the stop sign, is entitled to proceed whenever it appears to him, as a reasonably prudent man, that it is safe for him to negotiate the crossing. But when a crossing is protected by an electric semaphore light it is not essential for the favored driver to look for violations by side-street traffic facing the red light for that traffic is not only required to stop but to remain stationary until the semaphore changes to green.
This Court has given implied recognition to this distinction and has specifically held that it is not necessary for one intending to traverse an intersection on a green semaphore light to look to the left or the right before entering.
In Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 295, a case very similar to this one, the Court refused to hold a truck driver proceeding on a green light guilty of negligence for failing to observe that plaintiff's husband was not going to stop in obedience to a red signal light, which was not working at the time. In support of the ruling the opinion cited Manuel v. Bradford, La.App., 166 So. 657; Clark v. DeBeer, La.App., 188 So. 517; Seiner v. Toye Brothers Yellow Cab Company, La.App., 18 So.2d 189 and Fitzpatrick v. New Orleans Public Service, La.App., 22 So.2d 473, and concluded by adopting with approval the following observations:
"`We are living in an advanced stage of the motor age. Heavy and congested vehicular traffic on the streets and highways is a daily rule rather than an exception. In these circumstances, it is vital to the public interest that the traffic rules and regulations be adhered to strictly (particularly with reference to the traffic semaphore system) as the motorist is, to a large extent, compelled to operate his car in the belief that the law will be obeyed by others. Hence, in gauging the fault which is attributed to one, who was operating his car in obedience to positive *435 law, the courts should be convinced that the dereliction was most substantial and that it was such a direct factor that, without it, the accident would not have occurred.'"
If the Court of Appeal had followed the above stated rule no difficulty would have been encountered by it in concluding that the unfortunate accident befalling plaintiff was attributable solely to Robison's utter disregard for the law and of the safety and rights of others. Indeed, in evaluating Dr. Guice's testimony and drawing therefrom the deduction that he could or should have seen the Robison car before it sped through a red light and at a time when Dr. Guice would have been able to avoid colliding with it, the majority of the Court was, perforce, required to rest their finding on premises of a speculative nature instead of on proven facts. If the case had to turn on mathematical estimates of distances and speeds and time allotted for human reactions, we think that the views expounded in the dissenting opinion demonstrate that the majority conclusion is manifestly erroneous. But, as indicated above, this is not essential under the salient facts of this case. Suffice it to conclude that Dr. Guice was not at fault in attempting to traverse the intersection on a favorable signal light at a reasonable speed and that he, as a prudent man, had no reason to believe or anticipate that Robison would cannonball through the crossing in defiance of law.
The judgment of the district court holding Dr. Carroll V. Guice and Allstate Insurance Company liable in solido with the other defendants for damages, which was affirmed by the Court of Appeal, is reversed and it is now ordered that plaintiff's suit against these defendants be dismissed at her costs.
HAMITER, J., dissents with written reason.
HAWTHORNE, J., dissents.
HAMITER, Justice (dissenting).
A collision between two automobiles, occurring in the City of Shreveport shortly after midnight on October 20, 1955 at the intersection of Claiborne and Linwood Avenues which is controlled by an overhead electric semaphore signal light, resulted in serious injuries to Allean Youngblood. Recovery therefor is sought in this tort action, instituted by her against both drivers, Douglas W. Robison and Dr. Carroll V. Guice, and their respective liability insurers.
Traveling north on Linwood Avenue (paved and forty feet wide) the Robison car entered the intersection on a red light at an estimated speed in excess of fifty miles per hour. While therein it was struck on the left side (near its rear) by the Guice automobile which was proceeding easterly along Claiborne Avenue (paved and thirty feed in width) on a green light. The Robison vehicle then veered northeasterly off the street and crashed into plaintiff who was in a safety zone, standing on a platform and waiting for a trolley, some ninety-six feet from the point of impact.
In the accident one of plaintiff's legs was completely severed from the body, the other was mangled, and she sustained internal injuries. Later, the mangled leg was amputated and an abdominal operation (laparotomy) was performed on her.
The case was tried by a jury, and it concluded: "Verdict for plaintiff and against the defendants in solido in the amount of $25,000.00. The solidary liability of the defendant, Allstate Insurance Company, is limited to $10,000.00, and the solidary liability of the Fidelity Mutual Insurance Company is limited to $5,000.00. David J. Billeiter, Foreman."
Complaining that there was no evidence to the effect that he was guilty of negligence which was a proximate cause of the accident Dr. Guice, together with his insurer (the Allstate Insurance Company), moved for a new trial. In overruling the *436 motion the district judge (the late Honorable James U. Galloway) commented in part as follows: "* * * I am not prepared to say that there was no evidentiary basis for the jury's holding that Doctor Guice was guilty of a actionable negligence in this case, for there was evidence in the record in the form of testimony, in the form of physical facts, upon which honest men could have reached the conclusion that this jury reached.
"* * * We repeat, we think there is an evidentiary basis for the jury's verdict in this case and that it is not contrary to the law or the evidence. For if, indeed, it be true that Doctor Guice saw or should have seen Robison's car at a time when he could or should have taken some steps to avoid it, notwithstanding the fact that he had the green light, it would be the law that he would be liable; that his negligence would or could be a proximate cause of this accident. Even if we might have decided otherwise, which we decline to say, we think the verdict is supported by the law and the evidence and is not contrary."
Thereafter, the judge decreed, formally and in writing, that "* * * the verdict of the jury be and it is hereby made the judgment of the Court * * *."
Appealing to the Court of Appeal for the Second Circuit were only Dr. Guice and his insurer. There, with one of the three judges dissenting, the judgment was affirmed. 98 So.2d 570, 578. Among the pertinent observations contained in the majority opinion of the Court of Appeal are the following: "* * * it is obvious that under a traffic light system the dangers at street intersections are less than if there were no such signals, and the principle is recognized that where the danger decreases, less care is exacted, but it has to be remembered that the traffic light system does not eliminate all dangers at intersections, and, therefore, that all care and precaution are not dispensed with. Even though Dr. Guice was proceeding into the intersection under a favorable traffic signal, it could only be concluded that his failure to look to the right at all for approaching traffic constituted negligence and establishes that he failed to exercise the slight care required of him. Having thus failed and proceeding into the intersection in the face of imminent and impending danger, the conclusion is inescapable that the Doctor was guilty of negligence constituting a proximate contributing cause of the accident."
On separate applications of Dr. Guice and his insurer, Allstate Insurance Company, we granted the writ of certiorari or review; and the cause has been submitted for our consideration.
For determining the question of liability of applicants (admittedly Robison was grossly negligent and, as before stated, he and his insurer did not appeal from the judgment) the following legal principles, announced in cases cited and relied on by them, appear to be appropriate: "It can not and will not be disputed that a motorist, who recklessly and without exercising some degree of caution enters an intersection on a favorable light, is not free from negligence if he collides with another motorist who enters an intersection on an unfavorable light. And it can not and will not be disputed that a motorist can not, in the face of imminent danger, rely upon the right of way accorded him by law. But it also can not be disputed that under the traffic light system a motorist, who is proceeding on a proper signal, should not be held to the same degree of care and vigilance as if no such system prevailed. He has the right to assume that the signals are understood and will be observed and he is not required to anticipate that pedestrians or other motorists will, in violation of law, enter a crossing on a wrong signal. The danger at such crossing is less than if there were no such signals and therefore less care is exacted. * * *" Kientz v. Charles Dennery, Inc., 209 La. 144, 24 So.2d 292, 294. "The law in this state is well settled that a motorist who is proceeding on a right-of-way street, upon approaching an intersection where traffic is required under a city *437 ordinance, and is warned by stop signs, to come to a complete stop before entering the intersection, should not be held to the same degree of care and vigilance as if no ordinance existed or stop signs were errected. The danger at such an intersection is less than that at a corner where no stop signs have been erected, and therefore less care is required of the driver on a favored street. The motorist on the right-of-way street, with knowledge of the location of such a stop sign, has a right to assume that any driver approaching the intersection from the less favored street will observe the law and bring his car to a complete stop before entering the intersection, and such motorist can indulge in this assumption until he sees, or should see, that the other car has not observed, or is not going to observe, the law. * * *" Koob v. Cooperative Cab Company et al., 213 La. 903, 35 So.2d 849, 851.
After thoroughly and carefully studying the record in the light of the aforequoted pronouncements I am unable to say that the Court of Appeal erred in concluding (as evidently the jury in the district court also did) that the evidence preponderately disclosed negligence on the part of Dr. Guice that proximately caused the collision and plaintiff's injuries.
Dr. Guice testified that prior to the collision he, along with two companions seated beside him, proceeded easterly along Claiborne Avenue, facing a red light, at a speed of thirty to thirty-five miles per hour until he was about one-half block from the intersection. At that point he removed his foot from the accelerator and slowed somewhat. (The maximum speed limit on that street is not disclosed by the record.) When approximately thirty feet, or about two car lengths, from the intersection the semaphore signal changed and he then accelerated his machine and continued easterly on the favored green light. He was asked: "You had your whole attention, your visual sense was concentrated, on that light; is that not correct?" And he replied: "I would say yes, sir." He further said that momentarily after the acceleration he noticed the approach of the Robison car by "sort of a glance in my vision." Thereupon, "I automatically reflexed and hit my brake real hard."
As stated by Officer C. E. Nunley of the Shreveport Police Department, who made a thorough investigation of the accident and the area where it occurred, a person on Claiborne Avenue could see down (south on) Linwood Avenue (1) several hundred feet when located thirty feet west of the intersection and (2) approximately four car lengths if a similar distance away. Officer Nunley also testified that when Dr. Guice applied the brakes all four wheels of his car skidded a distance of twenty-eight feet before crashing into the left side of the Robison car. It further appears, from photographs contained in the record, that extensive damage was sustained by both vehicles.
From the foregoing circumstances it can well be concluded that Dr. Guice acted incautiously in entering the intersection and, therefore, was guilty of some negligence that proximately caused the collision. In the first place they suggest that Dr. Guice was not maintaining a general observation of the entire intersection as was his duty. If he had done so, instead of concentrating his attention on the green light, he would have noticed the approaching and speeding Robison automobile, especially its burning and glaring headlights; he would have realized the impending danger that lay ahead; and he would have had sufficient time to avoid the collision. In the second place the mentioned lengthy skid marks made by Dr. Guice's car and the extensive damage sustained by both vehicles (these obviously constituted some of the physical facts to which the trial judge alluded, as shown above) would seem to indicate that Dr. Guice entered the intersection at an excessive rate of speed.
Applicable to this cause, I think, is the following observation made by the Court of Appeal of the First Circuit in Veal v. Audubon Insurance Company of Baton *438 Rouge, 114 So.2d 648, 659: "* * * This is admittedly a borderline situation, and we have held that in such instances (where a second or so, or a few feet may make the difference between negligence or not) we will not disturb the determinations of the trier of fact unless manifestly erroneous. * * *" See also Gillion v. New Orleans Railway and Light Company, 130 La. 777, 58 So. 569 and Coles v. New Orleans Railway and Light Company, 133 La. 915, 63 So. 401.
For the foregoing reasons I respectfully dissent.
NOTES
[1] A disinterested witness estimated the speed of the Robison car to be 70 miles per hour on its approach to the Claiborne Avenue intersection.
[2] Linwood is a four lane two-way paved thoroughfare, 40 feet in width; Claiborne is 30-foot two-way asphalt street.