LAND, J.
Plaintiffs, major heirs of J. H. Nelson deceased, sued for $10,000 damages for his death, alleged to have been caused by the negligent operation of one of the defendant’s passenger trains in the city of Shreveport on June 20, 1914.
The petition alleges that J. H. Nelson, an old man about the age of 80 years, was struck. and killed at a much-frequented railroad crossing at the intersection of Wilson alley and Picket street, in said city, near the Union Depot.
The petition alleges: That at the time the deceased was struck.and killed he was upon or immediately next to the track of the defendant, on the Picket street side of said track, where they intersect, with his face looking towards the Union Depot.
That his back was in the opposite direction. That the defendant was then and there backing one of its passenger trains into the Union Station, said train approaching the deceased at his back unseen and unobserved, and not heard by the deceased.
The deceased was deaf, or hard of hearing. That said train was backing in at a great rate of speed, far in excess of six miles per hour, in violation of the city ordinances.
That the deceased was not in fault, and defendant’s employes saw and knew that he was in a most perilous situation, and could easily have avoided and averted the injury and death.
That defendant saw and knew the danger and peril of deceased, and he did not. That the defendant’s employés had a clear and unobstructed view of the deceased for a long distance, and in fact saw and knew his peril in ample time to avert harm, injury and death.
Defendant for answer denied the plaintiff’s allegations of negligence, and averred that the defendant voluntarily placed himself in a position of peril, knowing his inability to hear, and not using his sense of sight to ascertain the presence of danger.
Defendant further averred that due, sufficient, and ample warnings were given of the approach of the train by the continuous ringing of the warning bell stationed at the crossing, and by the blowing of the steam whistle at the end of the train.
Defendant further averred that several persons shouted to the deceased, and that everything was done that could be done to warn him of the approach of the train. ,
Defendant further averred that the train was approaching at a moderate rate of speed, under proper control, and that its servants had no reason to anticipate that the deceased would not hear the numerous warnings given and place himself in a position of safety, and that as soon as it was discovered that the deceased was not cognizant of the approaching train its said servants did all in their power to avoid the injury.
The case was tried before a jury, which found a verdict in favor of the plaintiffs for $2,500; and the defendant has appealed from the judgment pursuant to the verdict.
The city ordinance referred to in the petition provides that railroad trains shall not run at a greater speed than six miles an hour.
The decided preponderance of the evidence shows that defendant’s train was moving at from three to five miles an hour on the occasion in question.
The undisputed evidence in the case shows that Nelson, the deceased, an old man, deaf or very hard of hearing, on the evening of the accident assumed a position similar to the one described in the petition, and remained *679 in the same attitude until struck by the rear sleeper of defendant's train.
[1] Had Nelson turned his head and looked in the direction of the crossing, he would have seen the danger signal there displayed, and the train slowly backing towards the Union Station.
But the old man, after placing himself in such a position, never once used his sense of sight to protect himself from the danger of being struck by the incoming train.
Several witnesses testified that they, on account of his deafness, had warned Wilson not to go on the railroad crossing, but he always laughed and replied that he was able to take care of himself.
One of these witnesses, a Vicksburg, Shreveport & Pacific flagman at the crossing, testified that, a few days before the fatal accident he had pulled Nelson out of the way of a switch engine.
The conductor, several other employes, a baggage agent, and an experienced railroad man were on the platform of the rear sleeper.
Their concurrent testimony shows that the usual safety precautions were observed on approaching the crossing, and that the conductor was keeping a vigilant lookout to the front, and was continually sounding the air whistle.
These witnesses concur that there was a small crowd of negroes about the crossing, and that they could not see the dangerous position of Nelson until the car was close upon him.
In this emergency the conductor applied the air brakes, the employes shouted, and one of them reached forward and endeavored to shove Nelson further away from the rail.
We do not think that the facts show any negligence on the part of the defendant railway company.
3] The conductor had a right to assume that Nelson was in possession of the senses of sight and hearing, and would step back from the track upon receiving the usual warnings.
The electric bell at the crossing and the air whistle on the car gave all persons who could hear a double warning of the approach of the train.
Nelson, if he had looked, could have seen the danger signal at the crossing and the train as it approached.
Nelson could not hear and did not look, and continued to remain in the dangerous position he had voluntarily taken until he was struck by the train.
Nelson, until the last moment, could have stepped back and saved himself.
[2] Conceding arguendo that the defendant was negligent in not sooner seeing the danger of Nelson, the doctrine of the last clear chance has no application to this case. See Harrison’s Case, 132 La. 761, 61 South. 782; Castile v. O’Keefe, 138 La. 479, 70 South. 481.
It is therefore ordered that the verdict and judgment below be reversed, and it is now ordered that plaintiff’s suit be dismissed with costs.