PROVOSTY, J.
Plaintiff sues in damages for the death of her husband, who was killed by a train of the defendant company.
The right of way of the defendant company is fenced in, and has cattle guards at the road crossings. The accident occurred on a plantation where the train stops on being flagged. There is no depot there, nor anything else to mark a regular spot at which to stop; but the contention of plaintiff is that invariably the train had been stopping short of the plantation road which .crosses'the track, and short also of the cattle guard on the side of this road. We do not find this to be so, but find on the contrary, that on this plantation, as at all other like irregular stopping places, with nothing to mark any particular spot for stopping, the train stops for picking up would-be passengers as may be most convenient for them to get on — at the crossing as readily as short of it. However, we will deal with the case as if this invariable custom of stopping short of the cattle guard were established. For boarding the train when it stops short of the cattle guard, the would-be passenger has to cross the fence inclosing the right of way, and he does this by walking over the cattle guard. This is what deceased did, escorting a guest who desired to take the train. They walked along the track to where they thought the passenger would have to stand for boarding the train and flagged it, and, when it signaled that it would stop, deceased bade his guest good-bye, and started to walk back on the track towards the cattle guard and the crossing. He was then 80 feet from the cattle guard according to the averment of the petition, but only 50 feet according to the testimony of the guest. After he had crossed the cattle guard, the guest, seeing him still on the track with his back towards the approaching train and apparently unmindful of it, called out to him to hurry on, and he answered that he was “all right.” When he was struck he had left the track, but was still on the end of the cross-tie. He was 70 years old, but active, and neither blind nor deaf. The engineer says that when the signal to stop was given him the train was going 45 miles an hour and down grade; that he took the proper measures for an ordinary stop; that when he got to about 500 feet from the cross *61 ing one of the men stepped upon the track and “went walking right in the center of it” ; that he then sought to make an emergency stop, and gave alarm whistles, hut that the stop was no shorter, because the supply of air for the brakes had been already exhausted in the application for the ordinary stop.
This engineer was competent, and there can be no question but that he was vigilant. He knew that the man ahead on the track was fully aware of the approach of the train, for this man had just flagged the train. He had therefore every reason to believe that the man would not stay on the track. The fireman was ringing the bell. He so testified, and so did one of the plaintiff’s witnesses. When the engineer saw that the man was not getting off the track, he blew the alarm signals. We do not believe that he waited too long for doing this. He says not, and he certainly was the best judge in the matter; and the fact is he would hardly have blown these alarm whistles at all if it had not been because he thought they would have the effect of getting the man off of the track. The would-be- passenger, who was 80 fqet from the cattle guard, says that the alarm whistle was blowing when the locomotive passed him. The witness Carroll would have it that the “toot-toots” of the whistle were practically simultaneous with the collision; but he was so evidently a prejudiced witness that his estimates of time and distance (which kind of estimates are unreliable under such circumstances from the best of witnesses) are hardly to be relied on. The witness Meeker -heard the “toot-toots,” and immediately thereupon heard the witness Carroll exclaim that the train had struck deceased. The witness Sweetman heard the “toot-toots,” and turned around and looked, and saw deceased up in the air; and the witness Reagan heard the “toot-toots,” and immediately heard the witness Sweetman exclaim that the train had killed deceased. The fact that the engine finally stopped considerably beyond the crossing, and that the deceased was lifted from the ground, and flung so far, shows that the train was still moving fast, and that the space of time between the danger signal and the collision must have been very short indeed. So that the testimony of these witnesses is not necessarily in conflict with that of the engineer. And this is illustrated by the testimony of plaintiff’s witness, Porter, who, after having testified that they struck him as soon as they blew, was asked whether it was not all done at once, and answered “No,” and that it was not as fast as counsel snapped his fingers. The witness Miss Ida Dial says that the train was “right on him” when the first danger signal was blown, that the collision followed the danger signal as fast as one can clap one’s hands, and at the same time she says that he was about midway of the cattle guard when the first danger signal was given, and that he was struck just after he had stepped off of the cattle guard; and as a matter of fact the deceased was struck after he had cleared the cattle guard and could easily have stepped off of the track to avoid being struck if he had not assumed that he was far out of danger.
[1-3] There is no reason to suppose that the engineer acted wantonly. In Schulte v. Railroad Co., 44 La. Ann. 510, 10 South. 811, this court said that it is not to be assumed that the driver of a ear has acted wantonly. To do a thing of that kind a man would have to be hardened indeed; and, far from being that kind of man, the engineer in the case at bar was seen to have tears in his eyes when he came to where the unfortunate victim of the accident lay. The law is well settled that the engineer has a right to assume that a man who knows of the approach of a train will not remain on the track to be run over (Nelson v. T. & P. Ry. Co., 140 La. 676, 73 South. 769; Marston v. Shreveport *63 Traction Co., 140 La. 18, 72 South. 794; Cook v. L. & N. W. R. Co., 130 La. 917, 58 South. 767; Schulte v. R. R. Co., 44 La. Ann. 510, 10 South. 811; Elliott on R. R. §§ 453, 1257a; case note to 69 L. R. A. 513, at page 550), and also that the person who so remains and is injured is guilty of contributory negligence which bars recovery (Harrison v. L. W. R. Co., 132 La. 761, 61 South. 782; Hammers v. C. S., N. O. & P. R. Co., 128 La. 648, 55 South. 4, 34 L. R. A. [N. S.] 685; Little v. A. Wilbert’s Sons Lbr. & Shingle Co., 142 La. 122, 76 South. 582; Elliott on Railroads, §§ 1250, 1251, 1256. Even, therefore, if we were satisfied that the engineer had waited too long to give the danger signals, and that this constituted negligence on the part of the defendant company, but that there was no wantonness on the part of the engineer, as there clearly was not, plaintiff could not recover, because of his own contributory negligence.
[4] To the fact that the train did not stop short of the cattle guard we attach no importance whatever. There is no law or custom compelling a train to stop on any particular stop even at a regular station, let alone at a flag station, and especially at one with no mark for indicating where passengers are to stand for boarding the train. The train was late that day, and was making up time, which accounts, no doubt, for its having gone beyond where tile passenger was standing for boarding it. And, indeed, if the car step which the passenger was expected to use for getting on board had been stopped opposite to where he was standing, say 80 feet from the cattle guard, the front end of the train would have gone very considerably beyond the crossing. As already stated, the contention of plaintiff that the trains invariably stopped short of the cattle guard is left doubtful by the evidence as a whole; but, if we accept the testimony of the plaintiff’s witnesses that the trains invariably stopped from 10 to 50 feet short of the cattle guard, would that absolve the deceased from contributory negligence? Evidently not, in our opinion. No one has the right to assume that a train, especially at a flag station, will stop at any particular spot, and not run 10 or even 50 feet beyond any particular spot. Very evidently the deceased either forgot himself altogether or was guilty of the grossest kind of imprudence and negligence.
The judgment appealed from is set aside, and the suit is dismissed at the cost of plaintiff in both courts.
MONROE, O. J., takes no part.
O’NIELL, J., concurs in the decree.