No. 4071

Second Circuit

## WATERS ET AL. v. MERIWETHER TRANSFER CO., INC.

(November 18, 1931.  Opinion and Decree.)

Robert J. O'Neal, of Shreveport, Walter L. Brown, of El Dorado, Ark., and Harvey G. Fields, of Farmerville, attorneys for plaintiffs, appellees.

Dickson & Denny and Ben E. Coleman, of Shreveport, attorneys for defendant, appellant.

McGREGOR, J.  The plaintiff, a resident of the state of Arkansas, brings this suit against the defendant, a corporation domiciled in the city of Shreveport, for the sum

of $15,000 for herself individually, and for $15,000 as guardian for her minor daughter, for the death of Ollie Waters, her husband and the father of her daughter, caused by a collision between a seven-passenger Cadillac automobile, in which he was riding as a passenger alone on the back seat, and a truck owned and operated by the defendant company. The collision occurred on the paved highway between Smackover and El Dorado, Ark., about five miles north of El Dorado, on June 30, 1929, at eleven o'clock at night. The automobile was being driven by its owner, Clarence Edwards, traveling south, going toward El Dorado from Smackover. On the front seat with the owner there was a woman passenger named Mildred Studerick. The truck had attached to it a trailer and was loaded with oil field pipe, which extended over the end of the trailer more than four feet. It was also headed toward El Dorado, but parked on the same side of the pavement as the automobile was traveling. On the same day, T. E. McGraw, an employee of the defendant, was driving this loaded truck and trailer toward El Dorado and at about one o'clock p. m., when he was five miles north of El Dorado, one of the axles of the truck broke, and it became necessary for him to leave his load and go to El Dorado for the necessary parts to repair it. He left a negro boy with the truck, with instructions to guard it by day, and to warn traffic at night. There was no red flag on the rear of the load, nor was there any kind of rear light on the trailer. At the time of the accident, there was no light of any kind displayed on any portion of the truck, trailer, or load. There is a difference of opinion among the witnesses as to whether the truck and trailer with the load of pipe were parallel with the pavement and close to or off the edge, over on the shoulder. When McGraw reached El

Dorado, he was unable to find the necessary parts, so he telephoned to the office of the defendant, his employer, in the city of Shreveport for instructions. He was told that the parts could not be obtained and sent until the next day, Monday, and was instructed to take another of defendant's trucks, which was in El Dorado, and to come home in it. He obeyed these instructions, and consequently the broken truck with the trailer and load of pipe were left on the roadside in the exact position in which they were when the axle broke. The boy in whose charge it was left had no means with which to equip the rear of the trailer or the pipe with a warning light or other device. For some unknown reason, he did not utilize the lights that were said to have been on the truck proper. He built a temporary fire in front of the truck, but this soon went out for want of fuel to keep it going. It is more than likely that he soon became weary and went to sleep on the job. The place where the broken truck was left parked was about one hundred yards or less south of a cross-road which intersects the main highway at or near what is known as Goodwin's Service Station. After Clarence Edwards, the owner and driver of the car in which the deceased Ollie Waters was riding, had crossed this intersecting road, he, Edwards, suddenly discovered the parked truck and trailer in his pathway, and immediately swerved to the left in an effort to pass on the left of the truck. In this he was unsuccessful. Instead of passing the truck as he tried to do, the right rear end of the automobile collided with the protruding ends of the loaded pipe. Ollie Waters was hurled clear of the car several feet off the road on the right side, going in the same direction in which they were traveling, and died in about twenty or thirty minutes. The car proceeded on

a few feet and turned over on its left side without leaving the road, and stopped near the cabin of the truck, broadside with its front towards the truck.

The demand of the plaintiff is based on the alleged carelessness and negligence of the defendant's employee:

"(a) In leaving the automobile truck loaded with pipe standing on the public highway without lights or other warning signals, showing the presence of said automobile truck on said highway at said time.

"(b) In permitting said truck to be left on the highway at night with the pipe loaded thereon, extending more than four feet from the rear of the bed of said truck, and extending over the center of the highway without a light or other warning signal thereon, in violation of the Statutes of Arkansas, to warn persons using said highway that said pipe obstructed passage on said highway.

"(c) In leaving said truck on said highway in the night time without lights or other signals, or some person in attendance thereon, to warn persons of the presence of said truck, and obstructions."

The answer of the defendant denies all negligence on the part of its employee, and alleges that the accident was the result of the negligence of the driver of the automobile and its occupants, in that they were traveling at a careless and reckless rate of speed, and were under the influence of whisky at the time of the accident. It is specially pleaded by the defendant that the deceased Ollie Waters and Clarence Edwards with Mildred Studerick were on a mutual and joint mission, adventure, and riding party at the time of the accident, and that the deceased Ollie Waters thus assumed the risk and was chargeable with the negligence of the said Clarence Edwards. It is pleaded further that, in the alternative, if it should be found that the defendant was guilty of negligence, then the negligence of the said joint adventurers contributed to the accident, and that, on account of this alleged contributory negligence, the plaintiff's demands should be rejected.

On trial in the lower court, judgment was rendered against the defendant in favor of the plaintiff individually for the sum of $3,500, with interest, and, as guardian for her minor daughter, for an additional sum of $4,000, with interest. From this judgment, the defendant alone has appealed.

In the consideration of this case, there are four questions to be determined, namely: (1) Was the defendant, through its agent and employee, T. E. McGraw, guilty of negligence? (2) Was Clarence Edwards, owner and driver of the Cadillac automobile, guilty of negligence? (3) Were Clarence Edwards and Ollie Waters, the deceased, and Mildred Studerick engaged in a joint adventure, and is the negligence of Edwards, if any, imputable to Ollie Waters, the deceased? (4) Can the plea of contributory negligence be sustained?

The plaintiff filed in evidence three extracts from the laws of the state of Arkansas regulating vehicular traffic (Crawford & Moses' Dig. Ark. Supp. 1927, secs. 5506k1, 5506v1, 5506b2) which provides:

"(1) Whenever the load on any vehicle shall extend more than four feet beyond the rear of the bed or body thereof, there shall be displayed at the end of such load in such position as to be clearly visible at all times from the rear of such load a red flag not less than twelve inches both in length and width, except that between one-half hour after sunset and one-half hour before sunrise there shall be displayed at the end of any such load a yellow or red light plainly visible under normal atmospheric conditions at least two hundred feet from the rear of such vehicle. Ib. sec. 37.

"(2) That every trailer which is drawn

at the end of a truck shall carry a rear light which shall be visible a distance of five hundred feet.

"(3) Whenever a vehicle is parked or stopped upon a highway whether attended or unattended during the times mentioned in Sec. 5506v1 there shall be displayed upon such vehicle one or more lamps projecting a white light visible under normal atmospheric conditions from a distance of five-hundred feet to the front of such vehicle and projecting a yellow or red light visible under like conditions from a distance of five hundred feet to the rear, except that local authorities may provide by ordinance that no lights need be displayed upon any such vehicle when parked in accordance with local ordinances upon a highway where there is sufficient light to reveal any person within a distance of two hundred feet upon such highway. Ib. sec. 54."

It is conclusively proved that the load of pipe on the defendant's truck and trailer extended more than four feet beyond the rear end of the trailer, and that there was no red flag of any kind or description displayed at the end of the load by day, nor was there any light of any kind displayed at night. This plain violation of section 5506k1 of the Arkansas law constitutes carelessness and negligence.

It is admitted by defendant's driver, T. E. McGraw, that the trailer itself was not equipped with any kind of light. This is another violation of the law; and to leave a trailer loaded or unloaded on the side of a highway thus at night, without any kind of rear light, is the grossest kind of negligence.

It is testified by practically every witness on both sides that not only was there no light on the rear of the load or of the trailer, but there was no light anywhere about the truck, either in front or in the rear at the time of the accident. Such a violation, not only of the express law of the state, but of all rules of care and caution established by jurisprudence everywhere, is such gross negligence as would be absolutely inexcusable for any cause, if it is persisted in for any considerable length of time. In this case, the truck was left by the driver at one o'clock in the afternoon, and the accident occurred at eleven o'clock that night. The condition had therefore existed for ten hours. Defendant's driver had ample opportunity to do so, and should have procured the necessary lights and displayed them on the truck, trailer, and load, as is provided by law. The defendant company knew of the situation, and, instead of instructing McGraw to go out to the truck and place the proper lights on it, he was ordered to take another truck and come into Shreveport, which he did. It is true that McGraw left a negro boy, Alf Clark, in charge of the truck, but he did nothing to prevent any accident from happening. McGraw testified that he instructed Clark about turning the truck lights on, but he either did not do it or else the lights would not burn or went out. Clark was not sworn as a witness on this point.

Another act of negligence of McGraw was the position in which the truck and trailer with the load of pipe were parked. The witnesses differ on this matter, but the preponderance of the testimony is that the rear end of the load of pipe was a few feet on the left side of the middle of the eighteen-foot pavement, so that traffic in passing the truck had to leave the pavement and travel on the dirt shoulder. Leaving it parked in this position increased the hazard very much, and made the necessity for proper lighting much greater. We are bound to conclude from the evidence that the defendant was guilty of, and chargeable with, the grossest kind of negligence.

We come now to the question of the alleged negligence of Clarence Edwards, the owner and driver of the Cadillac automobile. The courts almost uniformly hold the driver of an automobile negligent when he collides with any kind of vehicle parked on the right side of a road at night, whether the parked vehicle was properly lighted or not. There are some exceptions to the rule, and plaintiff contends that there were circumstances connected with this collision which exculpate Edwards from the charge of negligence in the accident. Defendant's loaded truck and trailer were parked on the right or west side of the highway not a great distance south of a crossroad that intersects the highway, and about the same distance from the crest of a hill between it and the town of El Dorado. Clarence Edwards, the owner and driver of the Cadillac automobile, slowed down, sounded his horn, and proceeded with care and caution as he approached and crossed the said intersecting road. As he was crossing this road, another car with headlights burning, approached from the right or west and turned into the highway towards El Dorado. This threw this other car immediately behind the Cadillac, and the headlights from that car immediately cast a reflection in the windshield, as well as the rear view mirror of the Cadillac car. Simultaneously with this incident, another car came over the crest of the hill toward the Cadillac. Just when the lights of the car from the rear and the one coming toward him attracted his attention at the same time, Edwards was close to, and suddenly became aware of the presence of, the parked truck and trailer. The driver of the car that was meeting the Cadillac was of the opinion that Edwards was traveling at an excessive rate of speed, but the courts have uniformly held that it is impossible to judge the speed of an oncoming car with any degree of accuracy at night. Clarence Edwards and Mildred Studerick, the two surviving occupants, deny that the Cadillac was being driven at a reckless rate of speed. Edwards very properly approached the crossroad with care and caution, and devoted his attention to the automobile that was approaching the intersection at the same time, and which immediately followed behind him in the highway, going toward El Dorado. As the lights from the rear automobile cast their reflection on his windshield and rear view mirror at the same time as those from the on-coming car from the crest of the hill, he was prevented from seeing the parked truck and trailer in time to stop before reaching it. A sudden emergency was thus created, and he acted with the best judgment possible. Ordinarily, it is always held that a driver of an automobile must see every parked car or object on the right side of the road at night in time to stop his car before colliding with it, nor is he excused because of on-coming bright lights. If bright lights blind him, he must pull to the right and slow down or stop until the confusion is over. But if the sudden appearance of bright lights prevents him from seeing the parked vehicle and creates an emergency, he is not guilty of negligence, and is excusable, if he meets this emergency with the best possible judgment. In all the cases in which it is held that the driver of an automobile cannot be excused because of being blinded by approaching bright lights, the evidence shows that the driver of the automobile sees the bright lights for a considerable distance in front of him, and proceeds in spite of being blinded. But if the bright lights are brought suddenly into view, and there is no time between the first appearance of the bright lights and the happening of the accident to observe the nec-

essary rules of caution with reference to stopping and pulling to one side, the driver of the automobile cannot be charged with negligence for not stopping.

Another charge of negligence is that Clarence Edwards and Ollie Waters were drinking and in a state of intoxication at and before the accident, and that that fact contributed to the accident. A pint bottle of whisky was found on the ground close to the lifeless body of Ollie Waters. About one-fourth of the contents had been drunk. Just who drank it we do not know. One or two witnesses testified that they smelled whisky on or near Clarence Edwards and Mildred Studerick, and others testified that they did not. But the fact of the presence of a bottle of whisky and the fact that some witnesses did smell it is sufficient to show that the occupants of the car were drinking some. But not a single witness was able or willing to say that either Edwards or any one of them was intoxicated or under the influence of whisky. The small amount absent from the bottle, from which all three must have drunk, negatives the idea that any one of them was intoxicated. Counsel for the defendant cite a long list of authorities on the question of the assumption of risk by a passenger or guest who rides in an automobile driven by an intoxicated or drunken driver; but since we hold that Edwards, the driver of the automobile, was not intoxicated or even under the influence of whisky to any degree, it is useless to refer to or discuss these cases.

Counsel for defendant lay great stress upon the fact that Ollie Waters did not protest against the alleged reckless driving of Clarence Edwards. We hold that there was no reckless driving on the part of Edwards. He had slowed down and sounded his horn at the crossing, and did not have time to acquire any great excess of speed before the accident. If he had been going at a greatly excessive rate of speed, he would not have been as nearly successful as he was in clearing the truck. The collision would have been headon, and the disaster would have been greater than it was. But be that as it may, even if Edwards had been going at an excessive rate of speed at the moment of and just before the accident, Waters would not have had time to become aware of and realize the danger or the necessity of protest. Before the obligation to protest to the driver of an automobile against excessive speed can rest upon a passenger or guest riding with him, the passenger or guest must have sufficient time in which to realize the danger of the speed. It is not required of a passenger or guest on a back seat to be so alert as to see and realize danger as quickly as the driver should. So that, even if we should hold that Edwards was negligent because of excessive speed, this negligence could not have been imputed to Waters, the deceased, because of his failure to protest against it.

Counsel for defendant urge upon us the consideration of the question as to whether the three occupants of the Cadillac automobile were engaged upon a joint adventure at the time of the accident. It is contended that they were, and that if the driver were guilty of negligence that contributed to the accident, this would be imputed to the deceased Ollie Waters, and would preclude the plaintiff from recovering anything on account of his death. We hold that Clarence Edwards, the owner and driver of the Cadillac automobile, was not guilty of negligence, and that therefore there is no negligence to be imputed to the deceased. But because of the earnestness of counsel and the importance of the question raised, we will concede for the

sake of argument that Edwards may have been guilty of negligence, and will discuss the question as to whether the three occupants of the car were engaged in a joint adventure or whether, in that case, the negligence of Edwards should be imputed to Waters, the deceased. The only proved object of the trip in the automobile was the desire and purpose of Clarence Edwards, the owner of the car, to go to Smackover to get two extra tires for his car, preparatory to going to Hot Springs, Ark., the next day. He did not care to go to Smackover alone. The deceased was a friend of his, and he invited him to go along just for the ride. It is as clear a case of invited guest as opposed to a joint adventure as could be found. In the case of Franklin et al. v. L. & A. Ry. Co., 10 La. App. 526, 120 So. 679, 680, in passing on the question as to whether the negligence of the driver of an automobile is imputable to a passenger or guest on the back seat, this court said:

"But his negligence cannot be imputed to plaintiff's husband, who was on the back seat and was not responsible for the operation of the car."

In the case of Lawrason v. Richard, 16 La. App. 434, 129 So. 250, 253, the plaintiff, an invited guest in the rumble seat, brought suit against the driver of the car for damages on account of injuries received as the result of an automobile accident. On the necessity of protest from the guest, the Court of Appeal said:

"His seat in the rumble, with the curtain which separated his seat from that which was occupied by the defendant, buttoned down, made any communication between him and the defendant very difficult. In order for the plaintiff to have made himself heard by defendant while the car was going, it would have been necessary for him to speak loudly and raise his voice above the ordinary tone. The plaintiff could not see ahead through the curtain and darkness in the direction the car was going, so remained in his seat and said nothing to anybody in the front part of the car.

"The evidence shows that plaintiff was not consulted about the driving, the speed, nor anything that the defendant was doing in so far as concerned the driving of the car.

"That plaintiff had no control or authority over the car, nor over the defendant, nor as to defendant's manner and method of driving. The defendant, Richard, drove as he willed and saw proper. The fact that plaintiff made no request nor protest in such a situation cannot exonerate the defendant from responsibility because of his reckless disregard for prudence and care."

In the case at bar, the suit is not against the driver of the car, but the principle of the imputation of negligence is the same. In the case cited above, a writ of certiorari was granted by the Supreme Court "on the hypothesis that plaintiff and defendant were engaged in a joint enterprise, and that the acts of the one party were the acts of all, of which none could complain." In recalling the writ and affirming the judgment of the Court of Appeal, the Supreme Court said in 172 La. 696, 135 So. 29, 31:

"* * * There is no joint adventure, in the sense that the occupant of an automobile is equally liable with the driver unless there be also equal right to control the operation of the automobile. 42 C. J. 1179, sec. 957; Berry on Automobiles (6th Ed.) sec. 644."

In the case at bar, the deceased was not in the rumble seat, but the obligation of protest could not be as strictly enforced against him as against one on the front seat by the side of the driver. The opportunity to see and realize danger is exceedingly limited in the case of a passenger or guest on the back seat, and further-

more, the interference of a "back seat driver" is often more harmful than it is beneficial, and for that reason it is not encouraged by the courts. It is only in cases of apparent danger, and where there is time to realize the same, that an invited guest may seek to obtain judgment for damages on account of failure to protest to or warn the driver of the impending danger.

Also, in the case at bar, there is not a syllable of testimony to the effect that the deceased had any right to control the operation of the automobile. There is no testimony to the effect that the deceased was interested in the object of the trip to Smackover other than as a guest. In order to hold that the deceased was engaged in a joint adventure with Clarence Edwards, we must find a mutual interest in the object and purpose of the trip to Smackover, and, in addition thereto, we must find that the deceased had an equal right with the owner and driver of the car in respect of its control. Neither of these conditions existed in this case. The authorities are so numerous and conclusive on this subject it would serve no useful purpose to multiply citations. In the case of Withey v. Fowler Co., 164 Iowa, 377, 145 N. W. 923, 929, the court said:

"We can readily conceive that plaintiff and Loomer (the driver) might have been driving together under circumstances which would justify the conclusion that they were engaged in a common enterprise, but certainly such common purpose or interest is not to be inferred from the fact that they were riding in the same vehicle, one of them driving and managing the same, while the other occupied another seat, passively going wherever the driver saw fit to direct their course. Nor can it be inferred from the fact that the latter accepted the invitation of the former to ride as a matter of simple pleasure or outing. Indeed the fact that one invites and the other accepts a simple invitation of this kind, without suggestion of some common end to be accomplished by their united effort or agency, tends to negative any such relation."

The testimony in the case at bar shows that the deceased accepted the invitation of Clarence Edwards to ride to Smackover as a matter of simple pleasure or outing. He had no interest in securing the two extra tires in Smackover, and had no interest in the proposed trip on the following day to Hot Springs. The trip cannot, therefore, be held to have been a joint adventure in accordance with any definition of that term or of any authority that we have been able to find.

Holding that the deceased was not guilty of negligence for failing to protest to the driver, and that he was not engaged in a joint adventure, and that, therefore, no negligence of Clarence Edwards could be imputed to him, the question of contributory negligence passes out of the case, and it is useless to discuss it.

Counsel for defendant urge upon us that, even though we should not reverse the judgment of the lower court, the amount of damages awarded should be reduced. The lower court weighed the evidence very carefully and gave much time to the consideration of the case. We find no mitigating circumstances whatever. The leaving of the truck and trailer for ten hours where, and as it was, was absolutely inexcusable. It was carelessness and negligence of the grossest type. We do not find that the amount of damages awarded is excessive, and will not disturb it.

For the reasons assigned, the judgment appealed from is affirmed, with all costs of both courts.

DREW, J., concurs.