McBride, judge.
Plaintiff’s demands were dismissed below and he has appealed. He sued defendant railroad for $815.50 for personal injuries and hospital bills and for damages to his automobile sustained as the result of an accident on October 10, 1949, at about 1:50 p. m., in which plaintiff’s automobile was *415 struck by defendant’s diesel engine at the intersection formed by Lafayette Avenue and Fourth Street in the City of Gretna, Jefferson. Parish. The engine, pulling eleven freight cars, was traveling eastwardly en route to Algiers at a slow rate of speed, 4 to 5 miles per hour, and defendant was driving his automobile in a southerly direction at about IS miles per hour. It is an unquestioned fact that before driving his car onto the railroad track plaintiff did not stop, look or listen, saw no signals, and never knew of the train until a moment before the crash, although the bell of the locomotive was ringing continuously, its headlight was illuminated (a rule of the railroad), and the automatic red flasher or wig-wag signal lights which defendant maintained on both sides of the crossing to warn of the approach of trains were in full operation. Fradella was also warned that a train was coming by a bystander who was on the sidewalk. After the accident in a conversation with the witness Marsh, the plaintiff remarked: “I don’t know where I was going.” It might be mentioned that the whistle of the engine was not blown for the crossing due to the fact that there is an ordinance of the City of Gretna which prohibits the blowing of whistles on trains within the corporate limits.
Plaintiff, who was 26 years of age, at the time when his automobile was hit was participating in a parade of automobiles celebrating “Homecoming” of Gretna High School and his was the fifth or sixth car in the line. The procession was hc-aded by an official car of the Gretna Police Department in which two officers were riding and the red signal light atop the car was blinking and the siren was sounded at intervals. The police department car came up to the railroad track without stopping and as it crossed the track both officers looked to the right and saw that there was an approaching train, and according to their estimate the engine was then about three-fourths of a block removed from the crossing. Officer Kleinpeter testified that he waved his hand when ■ the car passed across the track meaning this to be a signal for the engine crew to stop the train. The police car then continued on its journey and as it neared the next comer, Fifth Street, the traffic light there changed to red which necessitated a stop being made. This had the effect of causing all succeeding vehicles in the parade to come to a halt, and the plaintiff says that most unhappily for him he was compelled to stop his car on the railroad track “bumper to bumper” with the car ahead. Defendant’s fireman denies that Fradella’s car was in a stopped position when the engine hit it. The composite of the testimony of the train crew is that ás Fradella’s car came toward the track the train was but a short distance from the crossing and when Carroll, the engineer, was apprised a car was approaching the track he attempted an emergency stop but to no avail, the automobile being struck by the engine and pushed forward for a distance of some 12 feet. Carroll' was on the right side of the cáb of the engine and he says he could not see Fradella’s car before the crash bécause it came from the left side of the track and it was the fireman’s duty to look out for automobiles or pedestrians coming from that direction. The fireman ■ was seated in a position in the cab opposite to Carroll and he states he only saw the automobile when it was 10 or 12 feet from the center of the track explaining that although he was keeping a lookout, it was impossible to see the automobile sooner • because a building housing a hardware store at the corner makes the corner “blind” and the structure is so situated that when a car on Lafayette Avenue is traveling as was Fra-della’s it could not have been seen from the engine until it passed the building and had emerged into Fourth Street. Photographic evidence shows that the corner is indeed a blind one. The fireman says that upon sighting the automobile, both he and the engine helper, who was also riding ■ in the .cab, immediately called out to the engineer “Hold it!” and Carroll instantly applied his brakes.- Marsh, the helper, supports the fireman’s statements in every point, except that Marsh said he saw Fradella’s car when it was 20 feet from the center of the track. Marsh mentioned *416 his having called Out to the engineer “Hold it!” a railroad expression meaning that an emergency stop should be made.
The plaintiff alleges .and his counsel strenuously argues that the accident was caused solely by the gross negligence of the train crew in disregarding the instructions of the police officers to stop the train before reaching Lafayette Avenue. It is also alleged and argued that there was a “willful desire” on the part of the engine crew “to force the right of way through the parade after being instructed to stop by the police * * The defense is that plaintiff attempted to- cross directly in front of the engine at a time when it was impossible for him to have negotiated the crossing with safety and that when it became apparent to the crewmen that plaintiff would make the rash attempt at crossing the track, the engineer applied his brakes as in the case of an emergency, but that because of the short distance between the engine and the automobile it was impossible to stop in time and the collision was therefore unavoidable. Plaintiff’s contributory negligence is pleaded as an alternative defense.
On behalf of the plaintiff it is stoutly contended that the employees of the ■ railroad should have known that' the line of automobiles constituted a parade and have come to the realization that all of the vehicles in the line would continue to proceed to cross the track until they all had passed. It was' testified to that the vehicles moving in the procession were decorated in the colors of the high school and that six convertible-type automobiles were carrying the maids of honor and that one of these was a passenger of Fradella. The decorations and the presence of the maids of honor in the automobiles, plus the fact that the police officer waved to the train-crew, it is said, should have brought home forcibly to the engineman that there was something unusual on Lafayette Street and he should have taken the precaution of bringing the train to a stop before reaching the crossing so as to avoid the possibility of an accident. This is in effect a plea under the doctrine of the last clear chance.
We can agree with counsel that the law is to the effect that any person operating a vehicle failing or refusing to comply with any lawful order or direction given by a police officer is negligent and this can be said to be so even though such an order or direction may be at variance with a signal given by a traffic light. But the question is, did Officer Kleinpeter order or direct the stopping of the train by giving an intelligible signal such as could be seen and understood by the trainmen ? The officer says he gave the signal by waving his hand in the direction whence the train was coming. The fireman and the helper admit they saw the police vehicle from their respective positions in the cab, but they state positively they did not see the signal the officer says he gave or any other signal from the police car. The plaintiff’s witnesses unanimously testified that all the vehicles were traveling about IS miles per hour, and thus we do not see how defendant’s employees even if they saw the officer’s hand from a distance of three-fourths of a block away could have interpreted this as a command to stop the train. It occurs to us that at a speed of 15 miles per hour the automobile traveled across the track in a flash, and we can well understand why no one riding in the cab of the engine :ever saw the officer wave toward the train. Nor is it difficult to understand why the men on the engine did not hear the siren of the police department car.
The engineer saw no cars on Lafayette Avenue approaching from the left of the track because of his position on the other side of the cab. The fireman who was seated on the left admits that he observed some traffic, on Lafayette Avenue, but he states there was nothing extraordinary about this as he always sees automobiles cross the railroad track at intersections and particularly the one in question. He stated “cars travel all day long over that crossing” and that “sometimes they try to beat you across.” No one in the cab noticed that the automobiles were decorated or that there was anything so unusual in their appearance as to attract 'especial attention. Marsh, like the fireman, saw vehicles, four or five of them, come from the left.and *417 cross the track, but he thought nothing of it until a red car came into his view. He said:
“I was standing on the left side of the engine in the cab and I was looking through the glass door. I saw some automobiles going over. Then, I didn’t see any more. I kept looking and a red automobile showed up and he was right near the stop signal, the warning signal, flasher signal and somebody spoke to the driver. I saw him turn his head and he kept on going.
“Then, I realized that he had run the red signal and didn’t intend to stop and I called to the engineer to ‘Hold it’. At the same time the fireman did, too.”
Counsel for plaintiff endeavors to make capital of what he points out as some implausible statements made by defendant’s employees and advances the argument that these statements render all of their testimony unworthy of belief. The fireman did testify that it would require 30 seconds to stop a train going at 4 miles an hour and that at such speed a railroad train travels about 10 or 12 feet in the period of 30 seconds. The engineer also thought it would take 30 seconds to stop the train after the brake was applied. It also appears that Marsh made a statement, which is absolutely out of keeping with the weight of the testimony, and that is that Fradella’s automobile was traveling at the rate of 8 miles per hour instead of IS miles per hour as all other witnesses testified. However, no matter how far-fetched such testimony is or may appear to be, we do not think the statements of the trainmen per se warrant the reversal of the judgment and the casting of defendant in damages.
We fail to perceive any negligence on the part of defendant’s éngineer. An engineer or other servant of the railroad in driving a train through a populated town such as Gretna undoubtedly will see many persons near the track and observe many automobiles on intersecting thorough-fares crossing the track ahead of the train, and under these circumstances the one in charge of the train ordinarily has the right to presume that a person at or near, the track or approaching a crossing in possession of his full mental faculties, is aware of the situation, and will exercise ordinary care and take the precaution which the law requires him to take to insure his own safety by staying out of danger. 74 C.J.S., Railroads, § 751 b, p. 1400; Cook v. Louisiana & N. W. R. Co., 130 La. 917, 58 So. 767; Smith v. Texas & P. R. Co., La.App., 189 So. 316; Franklin v. Louisiana & A. R. Co., 10 La.App. 526, 120 So. 679; Guillot v. Louisiana Ry. and Nav. Co., 3 La.App. 541. Because the automobiles which they observed crossing Fourth Street were in parade formation does not alter the situation, for the members of the train’s crew could discern nothing distinctive about the vehicles or that the manner in which they crossed the track was out of the ordinary, and we do not see how it can be said that the engineer was negligent in proceeding forward toward Lafayette Avenue at the slow rate of speed.
The doctrine of the last clear chance must be eliminated from the case. We think the engineer did all he possibly could when he became aware of Fradella’s danger by applying his emergency brake. Unfortunately the accident could not be avoided for the reason that there was an insufficiency of space in which the train could have been stopped. It cannot be overlooked that the train crew did not see Fradella’s red automobile until it came past the hardware store at the corner and when it was 10 or 12 feet from the center of the track, as estimated by the fireman, or about 20 feet from the center of the track, according to Marsh’s estimate. At any rate, the train was in close proximity to the crossing and the accident, so far as defendant’s employees are concerned was unavoidable.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.