174 So.2d 207 (1965)
PIGGLY-WIGGLY OPERATORS' WAREHOUSE, INC., Plaintiff-Appellant,
v.
COMMERCIAL UNION INSURANCE COMPANY OF NEW YORK, Defendant-Appellee.
No. 10352.
Court of Appeal of Louisiana, Second Circuit.
March 17, 1965.
Rehearing Denied April 28, 1965.
Cook, Clark, Egan, Yancey & King, Shreveport, for appellant.
Mayer & Smith, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
*208 AYRES, Judge.
Plaintiff, by this action, seeks to recover property damage sustained in a motor vehicle collision occurring about 3:00 o'clock in the morning of May 21, 1963, on U.S. Highway 71, one mile south of Hosston, Louisiana. Involved were plaintiff's tractor-trailer combination and defendant's assured's truck, normally used as the tractor portion of a unit in transporting house trailers.
Negligence charged to S. R. Bennett, defendant's driver, consisted of stopping his vehicle partially on a main-traveled portion of the highway, at night, in such a manner as to obstruct traffic, and in failing to properly set out flares, reflectors, or other warning devices or signals. Countercharges of negligence allegedly constituting the proximate or, in the alternative, a contributing cause of the accident were directed by defendant to plaintiff's driver, George W. Taylor. These consisted of an alleged failure to maintain a proper lookout or to observe the reflectors placed on the highway or the lights and reflectors on the rear of defendant's truck. Plaintiff's driver was additionally charged with excessive speed and failure to maintain proper control of his vehicle.
Written reasons for judgment were not assigned; nor does the record otherwise disclose the basis for the conclusions reached by the trial court. Plaintiff's demands were rejected and it has appealed.
Only factual issues are involved on this appeal, and these relate primarily to the question of liability and, more specifically, to the question of through whose fault the accident occurred. Therefore, a resume of the facts is deemed essential to a discussion and resolution of the respective contentions of the parties.
Defendant's truck, at the time of the accident, because of its disabled condition, was parked partially on the right-hand shoulder of the road, its left rear extending over the edge of the pavement into the roadway. Plaintiff's heavily loaded vehicle, also proceeding in a northerly direction, struck the left rear of defendant's truck, knocking it forward across the highway right of way and against a railroad embankment paralleling the highway. Plaintiff's driver lost control of his vehicle, which continued some 245 feet and, after leaving the pavement and taking to the right of way, struck and broke a telephone pole and turned over.
Bennett was returning to Texarkana from Gonzales, Louisiana, where he had delivered a house trailer. After passing through Shreveport, some malfunction developed in the operation of his vehicle, manifesting itself as a "clicking" noise in the motor accompanied by a loss of power. Twice he stopped, after driving his vehicle to the shoulder of the road, but each time he decided he could possibly continue to his base of operations. However, on proceeding some four or five miles after making the second stop, the motor continuing to give trouble, he endeavored again to drive onto the shoulder of the highway but was prevented from completely doing so because of the complete failure of his motor and the presence of a culvert-warning signpost to his right on the shoulder of the highway. When the truck finally came to a stop, its left rear end extended across the edge of the pavement. Bennett attempted, through the use of the battery-powered starter motor, to move the vehicle completely off the highway, but the power was insufficient to drive the left rear wheels over and across the concrete curb.
Bennett promptly placed three reflectors on the highwayone opposite the extended end of the truck and the other two at distances estimated at 10-15 steps and 25-30 steps, respectively, to the rear of the truck. He remained with his truck for a time estimated at an hour-and-a-half to two hours. During this interval, two or three cars passed without stopping.
Finally, a Volkswagen stopped; the driver offered aid and Bennett secured passage *209 to Texarkana to obtain assistance from fellow employees. With the reflectors stationed as aforesaid, and all lights, other than the headlights, burning (there were seven lights and four reflectors on the rear of the truck), Bennett left the scene about 2:00 o'clock in the morning. The accident occurred about an hour later. He, with assistants, returned to the scene between 4:00 and 5:00 o'clock and discovered that an accident had, in the meantime, occurred.
There were no eyewitnesses to the accident other than Taylor, operator of plaintiff's truck. His testimony is to the effect that he was driving 48 m. p. h. and was watching a fast-moving oncoming vehicle with bright lights which he had observed for a considerable distance; that, on meeting this vehicle, he was momentarily blinded and that, when he regained his vision, he was within 15-20 feet of defendant's truck when he saw it for the first time. In an effort to avoid a collision, he testified, he swerved his vehicle to the left, but he, nevertheless, struck the left rear of the parked truck with the right front of his own vehicle.
Plaintiff's cause of action is predicated upon the provisions of the Highway Regulatory Act, LSA-R.S. 32:141, which prohibits the parking of a vehicle upon a maintraveled portion of a highway when it is practicable to otherwise park it. Excepted from this provision of the statute is a disabled vehicle which may be temporarily parked on a main-traveled portion of a highway, conditioned on its removal as soon as possible. Pending removal of such a vehicle, the motorist is charged with the responsibility of protecting traffic.
Plaintiff also relies upon the provisions of the statute, LSA-R.S. 32:368, which requires that when a vehicle is parked on a traveled portion of a highway, flares or reflectors shall be placed and maintained as a protection to traffic, one to be placed beside the disabled vehicle, another to its rear, and still another in front at a distance of approximately 100 feet from the vehicle itself.
There can be no question that defendant's vehicle was disabled and could not be driven farther off the highway under its own power. Bennett so testified, and an inspection of the vehicle, subsequently made, conclusively established that fact.
We find no substantial basis for the contention that defendant's driver failed in his responsibility to protect traffic. The reflectors may or may not have been placed at the precise distances from the truck as the statute requires. The exact measurements were never established; only estimates were made. If there was a failure in this regard it was insignificant. In addition to the reflectors set out on the highway, there were, as heretofore stated, seven lights and four reflectors on the rear of the truck. When Bennett returned to the scene of the accident, the seven lights were burning. Three of the reflectors were in good condition; one had been damaged in the accident.
Although the aforesaid provisions of the Highway Regulatory Act are safety measures and designed to protect life and property on the highways, and although their violation has been held to constitute negligence per se, such negligence is actionable only if it is a legal cause of the accident. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Johnson v. Lowrey, 70 So.2d 212, La.App., 2d Cir. 1954; Cone v. Smith, 76 So.2d 46, La.App., 2d Cir. 1954 (cert. denied); Call v. Huffman, 163 So.2d 397, La.App., 2d Cir. 1964 (writ refused).
In determining whether plaintiff is negligent in failing to observe a stationary vehicle obstructing the highway, no hard and fast rule can be laid down, but the surrounding facts and circumstances bearing on the particular case must necessarily be considered. Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377 (1940); Hemel v. United States Fidelity & *210 Guaranty Co., 31 So.2d 38, La.App., Orleans 1947. The duty to use reasonable care for the safety of others places the operator of a motor vehicle under a continuing duty to keep a proper lookout for other vehicles which may be properly parked along the road. Therefore, although it is the duty of a motorist to have his vehicle under such control that he can bring it to a stop within the range of his vision, the standard to be applied in determining whether a motorist is guilty of negligence is the standard to be exercised by reasonably prudent motorists under the facts and circumstances then prevailing. Roder v. Legendre, 147 La. 295, 84 So. 787 (1920); Brown v. Liberty Mutual Insurance Company, 234 La. 860, 101 So.2d 696 (1958); Wiley v. Sutphin, 108 So.2d 256, La.App., 2d Cir., 1959; Roy v. United Gas Corporation, 163 So.2d 587, La.App., 3d Cir.1964 (writ refused); 65 C.J.S. Negligence § 11b, at 389.
Plaintiff relies upon and cites numerous authorities supporting the view assumed by it in the instant case. These holdings are to the effect that a motorist traveling by night is not charged with the duty to guard against striking an unexpected or unusual obstruction which he had no reason to anticipate; that a motorist who strikes an obscure and unusual obstruction on the highway in the nighttime is not necessarily guilty of negligence; and that a motorist temporarily blinded by the lights of an oncoming car is not always guilty of negligence in striking an unexpected obstruction on a highway. The leading case upon which plaintiff relies appears to be Gaiennie v. Cooperative Produce Co., supra, wherein a full discussion of the jurisprudence on this subject is found.
The law applicable to determine whether plaintiff was guilty of negligence in effect at that time was Act 21 of 1932, § 3, Rule 4, Par. (a), which was substantially the same as that presently in effect. For instance, LSA-R.S. 32:64, which, so far as pertinent, provides:
"A. No person shall drive a vehicle on the highway within this state at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the traffic on, and the surface and width of, the highway, and the condition of the weather, and in no event at a speed in excess of the maximum speeds established by this Chapter or regulation of the department made pursuant thereto."
The truck involved in the Gaiennie case, of a stake body design, painted blue, on running out of gasoline, was parked in such a manner that it did not clear the paved portion of the highway. One of the front wheels rested on the right shoulder and the other, as well as both rear wheels, rested on the pavement. The body of the truck extended at an angle approximately five feet across the paved slab. No rear, tail or clearance lights were burning; nor were flares or other reflectors placed on the highway to warn approaching traffic. Serious doubt existed as to whether the headlights were on, but, if so, it was pointed out that the headlights shone directly in front of the truck and did not serve as a warning to traffic approaching from the rear. This case, typical of all those cited on the subject now under consideration, is clearly distinguishable, as are the other cited cases.
No contention is made that the seven lights and the four reflectors on the rear of the parked vehicle did not comply with the statute and did not emit a red light clearly visible from a distance of 500 feet to the rear. Moreover, and as aforementioned, reflectors were placed on the highwayone to the side and two to the rear of the truck. The body of the truck did not extend upon the pavement beyond the rear wheels.
*211 In this connection, it appears appropriate to point out that the physical facts clearly reflect that plaintiff's driver was not maintaining a proper lookout. Admittedly, he was not directing his attention to his own driving or to his lane of travel. His attention was focused on the oncoming vehicle which he had watched from afar.
In Hemel v. United States Fidelity & Guaranty Co., supra, it was held that a motorist who was temporarily blinded by the lights of the last of several approaching automobiles and who collided with the rear of a truck which was parked in the middle of the right lane of the highway, with clearance lights burning, was negligent in not seeing what a reasonably careful and prudent driver would have seen and avoided.
This court, in King v. Risdon & W. E. Holoman Lumber Company, 76 So.2d 548, La.App., 2d Cir.1954 (cert. denied), observed that, in the application of the pertinent statutory regulations, the courts have formulated and repeatedly given effect to the general rule that a motorist will be held to have seen an object which, by the use of ordinary care and prudence, he should have seen in time to avoid running into, and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that in which he can stop within the range of his vision. Thus, it was held that, where a disabled truck, with lights burning, was parked on a highway and its rear lights could easily have been seen under prevailing conditions from a distance of 500 feet, the driver of the automobile which crashed into the rear of the truck was guilty of negligence in failing to see the lights on the truck and in not reducing the speed of his automobile within the limits of safety, even if his vision was obscured by the lights of an oncoming automobile. See, also, Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238 (1937); Gates v. Arkansas & L. M. Ry. Co., 180 So. 835, La.App., 2d Cir.1938; Meaux v. Gulf Ins. Co., 182 So. 158, La.App., 1st Cir.1938; Domite v. Thompson, 9 So.2d 55, La.App., 2d Cir.1942; Boland Machine & Manufacturing Co. v. Highway Ins. Underwriters, 22 So.2d 307, La.App., Orleans 1945; Odom v. Long, 26 So.2d 709, La.App., 2d Cir.1946; Woodall v. Southern Scrap Material Company, 40 So.2d 495, La.App., Orleans 1949; Dauzat v. Kelone, 65 So.2d 924, La.App., 2d Cir.1953.
From a review of the facts, this case does not appear to come within that group in which there was something so unusual as to explain the failure of the driver of the moving vehicle to see the stationary one. Representative of such cases are the following: Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253 (1917); Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1 (1936); Gaiennie v. Cooperative Produce Co., supra; Moncrief v. Ober, 3 La.App. 660 (1926).
The instant case rather falls into the group of cases in each of which it was held that the driver was negligent in not seeing what a reasonably careful and prudent driver could have seen and would have avoided. Louisiana Power & Light Co. v. Saia, supra; Woodley & Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469, 470 (1930); Blahut v. McCahil, 163 So. 195, 197, La.App., 1st Cir. 1935; O'Rourke v. McConaughey, 157 So. 598, 606, La.App., Orleans 1934; Hutchinson v. T. L. James & Co., 160 So. 447, La.App., Orleans 1935; Bordelon v. T. L. James & Co., 148 So. 484, La.App., 2d Cir. 1933; Safety Tire Service v. Murov, 19 La.App. 663, 140 So. 879 (1932); Waters v. Meriwether Transfer Co., 18 La.App. 18, 137 So. 578, 581 (1931); Raziano v. Trauth, 15 La.App. 650, 131 So. 212 (1930); Sexton v. Stiles, 15 La.App. 148, 130 So. 821, 828 (1930).
Viewing the facts and circumstances of the instant case in the light of the aforesaid principles, the conclusion is inescapable that plaintiff's driver was guilty of negligence constituting, if not the sole *212 cause of the accident, at least a contributing cause. His failure to keep or maintain a proper lookout is a factor at least contributing to the occurrence of the accident. On the other hand, defendant's driver, after stopping his vehicle, complied substantially with the requirements of the statute. No causal relationship is shown between his alleged partial dereliction of duty and the occurrence of the accident. In any event, we find no basis established for concluding there is manifest error in the judgment appealed.
Accordingly, the judgment appealed is affirmed at plaintiff-appellant's cost.
Affirmed.